AMERICAN NAT. INS. CO. v. THOMPSON
et al. (No. 7143.)*

(Court of Civil Appeals of Texas. Galveston.
April 14, 1916. Rehearing Denied
May 4, 1916.)

1. INSURANCE ⬤➛445(3)—CONSTRUCTION OF
POLICY—COMMENCEMENT OF RISK—"FIRST
POLICY YEAR."

A life policy was issued August 11, 1913, the first annual premium to be paid November 29, 1913, and annually thereafter, with a rider attached for the short term from July 29, 1913, to November 29, 1913. Premiums on both policies were paid. The main policy provided that it should be void if insured committed suicide within a year. *Held*, that the year began to run from the date of the short-term policy, and suicide November 6, 1914, did not avoid the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1157; Dec. Dig. ⬤➛445(3).]

2. APPEAL AND ERROR ⬤➛1050(1)—REVIEW
—HARMLESS ERROR.

Where the trial court correctly construed a written instrument, testimony confirming and not contradicting such construction was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157; Dec. Dig. ⬤➛1050(1).]

Appeal from District Court, Houston County; John S. Prince, Judge.

Action by T. W. Thompson and another against the American National Insurance Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Nunn & Nunn, of Crockett, and Williams & Neethe, of Galveston, for appellant. Aldrich & Crook, of Crockett, for appellees.

PLEASANTS, C. J. This suit was brought by appellees, T. W. Thompson and F. H. Hill, executors of the will of David Thompson Adair, deceased, to recover upon a policy of insurance upon the life of said Adair, issued by appellant.

Among other defenses pleaded by the defendant it was averred, in substance, that by the terms of the policy sued on it was expressly stipulated and agreed that if the insured committed suicide "during the first policy year" defendant should only be liable for the premiums paid on the policy, and that insured did commit suicide within the first policy year, and therefore defendant was only liable for the sum of $131.63, the first year's premium of said policy paid by the insured, which amount defendant tendered plaintiffs. The trial in the court below without a jury resulted in a judgment in favor of plaintiffs for $2,500, the full amount of the policy, together with interest, 12 per cent. damages and attorney's fees.

The following are the material facts shown by the evidence: The policy sued on was issued on August 11, 1913. The insured committed suicide and his death occurred on November 6, 1914. The material provisions of the policy are as follows:

"This policy and the application therefor shall constitute the entire contract between the insured and the company and shall be incontestable for any cause whatever after one year from the date of issue provided premiums are duly paid. If during the first policy year the insured shall suicide, whether sane or insane, or dies as a consequence of violation of the law, the company shall be liable only for the premium actually paid thereon. A statement made by the insured shall in the absence of fraud be deemed a representation and no warranty. If the age of the insured has been misstated the amount payable under this policy shall be the amount which the premiums actually paid would have furnished at the correct age."

The premiums stipulated to be paid are an annual premium of $131.63 and an extra premium, for double indemnity, of $2.50. Under the head of "Consideration," the following is set out:

"The consideration of this policy is the application herefor and which is made a part of this contract and a copy of which application is attached hereto and endorsed hereon and payment in advance of the annual premium of $131.63 for term insurance for year ending the 29th of November, 1914, and the payment of a like sum on or before the 29th of November every year thereafter until full premiums have been duly paid for twenty years from the date hereof or until the prior death of the insured."

Attached to the policy is what is usually called a rider, reading as follows:

"In consideration of the written and printed application for 'short-term' insurance heretofore submitted to the American National Insurance Company of Galveston, Texas, together with an application for policy of insurance No. 20571 dated July 29, 1913, to which this rider is attached, and of the payment in advance of twenty-three and $3/100$ dollars (computed at 'monthly term' rates) this agreement is issued in conjunction with said policy.

The American National Insurance Company hereby insures the life of David Thompson Adair, the insured under the aforesaid policy, for like amount and under like conditions as stated in said policy for the period July 29, 1913, to November 29, 1913, inclusive, preliminary to the date when the principal contract shall become in full force and effect."

The application upon which the policy was issued contains the following:

"I have paid to J. S. Walker & E. C. Arledge $157.15, the first annual premium on the policy applied for on the condition that if the risk is not assumed by the Company, this sum is to be returned in accordance with the provisions of Conditional Receipt No. 3483 which I have accepted subject to the provisions thereof. Term Insurance from 7/29/13 to 11/29/13, $23.02."

Walker and Arledge were the agents of the company who procured the application. As to the circumstances under which the application was obtained, the premiums paid, and the policy issued, Arledge testified:

"I believe it was about the latter part of July, 1913. Mr. Walker was with me; we came to Mr. Adair; he was in the hay field. It was about the latter part of July, 1913, and the question came up as to whether he would be able to pay the policy in the summer. We suggested that he take term insurance until fall, when his crop would be off and he could pay it then. We gave him term insurance for four months; he carried it to the 29th day of November. He gave us his note at that time for

---

the entire premium covering the term insurance, which he afterwards paid. The company did not handle the note; we paid them cash. That was all arranged at one time—the premium for the term insurance and the premium for one year. That was on the 29th day of July when the original application was made. He paid the note before it was due. I don't remember when it was due. I handled it with the company as a cash transaction. The company was paid on or about the 1st of September. It was all charged to my account, and I paid the whole account and paid other accounts with that; it covered the whole premium. The purpose in having the term insurance was for the insured's convenience, as it would not be convenient for any farmer to pay premiums in the summer."

[1] The only question presented by this appeal is whether the clause in the policy, "If during the first policy year the insured shall suicide," should be construed to mean the year beginning on August 11, 1913, the date of the issuance of the policy, or the year beginning November 29, 1913, the date of the expiration of the short-term insurance, and the date from which the yearly premiums provided in the policy should be computed. The trial court found that the "rider" providing for the short-term insurance from July 29 to November 29, 1913, was a part of the policy and there was in fact but one contract of insurance, which was issued on August 11, 1913, and that the first policy year, as that term is used in suicide clause of the policy, began on the date of the issuance of the policy. Appellant, under appropriate assignments of error, assails this finding, and contends that the term insurance and the contract for the long-time insurance at a yearly rate were separate and distinct contracts, and therefore the suicide clause does not apply to the time covered by the "rider" providing for the short-term insurance.

We think the trial judge was correct in holding that there was but one contract. The rider was attached to the policy and recites that it was issued in consideration of the application for short-term insurance, together with the application for the long-term policy and in conjunction with said policy; and that the life of Adair is thereby insured for the short term for a like amount and under like conditions as stated in the policy. We do not think it could be doubted under these provisions of the "rider" that if the insured had suicided between the issuance of the policy and the 29th day of November, 1913, the suicide clause of the policy would have applied, and appellant would only have been liable for the premium paid on said policy. If the suicide clause in the policy covered the period between the dates last named, then it could not be held to cover the date on which the insured committed suicide, because by its terms it only covered one year. If, instead of attaching a "rider" to the policy providing for the short-term insurance, the contract of insurance had recited that the premiums to be paid on said policy should be $131.63 yearly in advance, but that for the convenience of the insured the company had accepted the premium for one year and four months and at the expiration of that time the premiums should be paid for only one year in advance, it seems clear to us that the suicide provision of the policy would cover the year beginning with the issuance of the policy. We think the premium for short-term insurance evidenced by the "rider" attached to the policy, construed with the policy and in the light of the evident purpose for which such short-term insurance was taken and paid for, amounts to nothing more than an agreement on the part of the company to accept the premiums for one year and four months, and that by such payment the insured was protected for said time in the amount named in the policy and "under the conditions therein stated," and that the policy as a whole took effect on the date of its issuance, and the suicide clause in the policy can only be held to cover the year beginning with the issuance of the policy.

[2] The construction we have placed upon the contract is clearly the meaning of the writings themselves; and the testimony of the agent, Arledge, was not necessary in order to arrive at the intention of the parties as expressed in the writings. Since this testimony in no way alters or contradicts the provisions of the written contract, it was not prejudicial to appellant, and the assignment of error complaining of its admission cannot be sustained.

The case of Gans v. Insurance Co., 214 N. Y. 326, 108 N. E. 443, L. R. A. 1915F, 703, cited by appellant, does not sustain the contention that the suicide clause in the policy involved in this suit only covers the year beginning November 29, 1913. In the case cited a policy for five years was issued on April 5, 1911. This policy provided that at its expiration the insured should have the option of making one of several stated contracts with the company. In the exercise of this option the insured, on April 5, 1912, procured a contract of insurance from the company which contained the provision that "if the insured shall commit suicide within one year from the date hereof, while sane or insane, this policy shall be null and void." The insured committed suicide within a year after the 5th of April, 1912; and in a suit by his beneficiary to recover on the policy the plaintiff claimed that the one year covered by the insurance clause should date from the 5th of April, 1907, the date of the issuance of the policy for five years. The court held:

"The intent of the insured and the company existing April 5, 1912, as expressed binds and obligates both of the parties. Presumptively, their intent is expressed by the natural and ordinary meaning of their language referable to it, and such meaning cannot be perverted or destroyed by the courts through construction. * * * The policy in suit is dated April 5, 1912, and in it the insured and the defendant said: 'If the insured shall commit suicide within one year from the date hereof, while sane or

insane, this policy shall be null and void.' This is a rigid and certain agreement from which no doubt or hesitation as to its meaning can spring. They also said: "This policy and the application herefor constitute the entire contract between the parties hereto.'"

We do not see how any other decision could possibly have been rendered. If the contract of insurance in this case had expressly provided that the suicide clause in the policy only covered one year from November 29, 1913, the case cited would be in point, but it is no authority for appellant's contention as to the proper construction of this contract.

We are of opinion that the judgment of the court below should be affirmed and it has been so ordered.

Affirmed.