[L. A. No. 11806. In Bank.—December 29, 1930.]

EMMA S. NARVER, Respondent, v. CALIFORNIA STATE LIFE INSURANCE COMPANY (an Insurance Corporation), Appellant.

C. E. McLaughlin, C. P. McLaughlin and McLaughlin & McLaughlin for Appellant.

Ugene U. Blalock for Respondent.

THE COURT.—After further consideration of the opinion in this case, written by Justice Marks of the Fourth Appellate District and concurred in by Justice Barnard and Justice *pro tem.* Owen, we are of the opinion that it correctly disposes of the questions of law presented by the facts of said case, and we approve and adopt the same as the opinion of this court.

Said opinion is as follows:

"Respondent is the widow of Chester Narver and the beneficiary named in an insurance policy issued by appellant on his life.

"On October 28, 1927, the deceased made his application to appellant for a policy of insurance upon his life in the sum of five thousand dollars, and on the same day executed his promissory note to appellant in the sum of $176.95 in payment of the premiums to accrue under said policy until

February 28, 1929. The promissory note was subsequently paid. The deceased took his medical examination and the policy was issued by appellant on the 28th day of November, 1927, and delivered to deceased on or about December 1st of the same year.

"The insurance policy contained the following paragraph:

" 'This policy is incontestable after one year if all premiums shall have been duly paid, except as to provisions and conditions relating to any double indemnity or total and permanent disability benefits which may be issued in connection herewith. In case of suicide of the insured, committed while sane or insane, within one year from the date hereof, the limit of recovery hereunder shall be the total amount of the premium paid.'

"Above the signature of the president and secretary of the Insurance Company on the policy appears the following:

" 'In witness whereof, California State Life Insurance Company has caused this policy to be signed by its President and its Secretary at Sacramento, California, this twenty-eighth day of February, 1928. Which is the date of this policy.'

"The policy further provided that:

" 'This policy and the application therefor (a copy of which application is attached hereto when issued) constitute the entire contract between the parties hereto.'

"Attached to and made a part of the policy under this clause was the application for insurance in which the following appears:

" 'I further agree that the effective date of any policy which may be issued hereon shall be determined as follows: (a) If the premium be fully paid with this application, such policy shall take effect at twelve o'clock noon of the day upon which this application is approved by the company at the home office.'

"In the report of the medical examiner, a copy of which was attached to the policy, there appears the following:

" 'I have verified each of the foregoing answers on this page and on the first page hereof and adopt them as my own, and warrant that they are full, complete and literally true answers to the questions against which they are written. I further agree that if during the first year following

the date of any policy issued hereon I commit suicide, whether sane or insane, the only liability under any policy issued hereon shall be for a fixed sum equal to the actual cash premium paid to the company on said policy.'

"On October 25, 1927, there was delivered to the insured a receipt, the material parts of which were as follows:

" '178248                                    October 25, 1927

" 'Received of Chester Narver One Hundred Seventy-six and 95/100 Dollars in full for fifteen months the first annual premium on Five Thousand dollars insurance. Counter-signed by Harvey Stewart, Agent.'

" 'The insurance shall take effect and be in force: (a) At twelve o'clock noon of the date of approval at the home office of the Company, if the premium be fully paid with the application; (b) Upon manual delivery of the policy to the applicant during his lifetime and good health and full payment of the premium thereon, if such premium has not been paid with the application.

" 'California State Life Insurance Company, J. R. Kruse, President. Do not detach this receipt except for delivery to applicant for full settlement of premium. This is the only form of receipt authorized by the company to be given to an applicant for a premium collected when the application is taken. California State Life Insurance Company. Sacramento, California.'

"Attached to the policy of insurance as an endorsement or rider, was the following:

" 'November 28, 1927

" 'In consideration of the payment in advance of a Short Term Premium of Twelve and 60/100 Dollars, California State Life Insurance Company agrees, subject to the provisions of this policy and the application therefor, to pay the amount insured hereunder if the death of the insured shall occur prior to February 28, 1928, which is the beginning of the first policy year. Double indemnity and Total Disability Benefits, if either thereof be stipulated in this policy, are not included herein, and neither shall be effective until noon of the date herein stated, and then only if the premium for the first policy be fully paid. (Signed) Arthur Luddy, Asst. Secretary.'

"Insured committed suicide on December 10, 1928. Proofs of his death were made and delivered to appellant, and demand was made upon it by respondent for the sum of five thousand dollars, which payment was refused. On January 3, 1929, appellant tendered to respondent the sum of $164.35, which was the amount of the premium on the policy of insurance for the year commencing February 28, 1928.

"Respondent brought this action to recover on the policy of insurance, and after a trial in the court below, without a jury, the court found all facts in her favor and rendered judgment against appellant for the principal sum of five thousand dollars.

"Appellant presents two grounds upon which it asks this court to reverse the judgment of the trial court. The first is that, as it maintains there were two policies of insurance issued to deceased, one being a short-term policy commencing on November 28, 1927, and ending on February 28, 1928, the premium for which was $12.60, and the other a twenty-year nonparticipating policy commencing on February 28, 1928, the premium being $164.35, payable annually on the 28th day of each February. The second ground upon which the reversal is asked is a corollary of the first, namely: that since the policy of insurance in effect on December 10, 1928, did not become operative until February 28, 1928, one year had not elapsed at the time of the suicide of the insured, and that, therefore, the principal sum of five thousand dollars could not be collected, but that only the annual premium paid, $164.35, was recoverable. The exact questions presented upon this appeal do not seem to have been decided in California.

"It is a well-recognized rule of law that if any uncertainties or ambiguities appear in an insurance policy which may be solved by either one of two reasonable constructions, the one which is most favorable to the insured and which will give life, force and effect to the policy should be adopted. The insurance company having prepared the policy and all documents used in connection with its issuance, should not be heard to put such a construction upon an ambiguity, caused by it, as will defeat the policy and take from the beneficiary the very purpose and object of the

insurance, if a reasonable construction upholding the insurance can be had that does no violence to the language used and the clear intention of the parties. (*Pacific Heating & Ventilating Co. v. Williamsburg etc. Co.*, 158 Cal. 367 [111 Pac. 4]; *Welsh v. British American Assur. Co.*, 148 Cal. 223 [113 Am. St. Rep. 223, 7 Ann. Cas. 396, 82 Pac. 964]; *Witherow v. United American Ins. Co.*, 101 Cal. App. 334 [281 Pac. 668].) With this rule in mind, we will proceed to a consideration of the contract of insurance involved in this appeal.

■ "Appellant contends that the endorsement, or rider, on the main policy of insurance, which put in effect the insurance from November 28, 1927, to February 28, 1928, was a policy of insurance complete in itself and a contract separate and distinct from the main policy. With this we cannot agree. Taken by itself, this endorsement means nothing. Of itself, it is not a contract in any sense of the word. By its terms it refers to the main policy and the application therefor, and except as specifically excepted in the endorsement, it put the provisions of the policy into force and effect.

■ Endorsements on an insurance policy form a part of the insurance contract (25 Cyc. of Law and Procedure, 743), and the policy of insurance with the endorsements and riders thereon must be construed together as a whole (*Sharp v. Scottish Union Nat. Ins. Co.*, 136 Cal. 542 [69 Pac. 253, 615]).

■ "Considering the policy of insurance as a whole, we find a most obvious and patent ambiguity as to its date. The closing paragraph of the main policy gives February 28, 1928, as its date. The application for the insurance, of which there was only one, and which was made a part of the contract of insurance, contains the direct statement that 'if the premium be fully paid with this application such policy shall take effect at twelve o'clock noon of the day upon which this application is approved by the Company at its home office.' The application was approved and the policy actually issued on November 28, 1927. It was registered with the insurance department of the state of California on November 29, 1927, and delivered to deceased two days later. His note was given and accepted as payment of the premiums and was therefore a payment of them (*Harrigan v. Home Life Ins. Co.*, 128 Cal. 531 [58 Pac. 180, 61

Pac. 99]). The receipt given to the insured by the company contained language identical with that in the application as to when the policy should take effect. From these documents the insured was justified in assuming that his policy of insurance became effective at noon on November 28, 1927. Why the date of February 28, 1928, was used at the close of the policy is not entirely clear. It is not an unreasonable conclusion, in fact it is entirely probable, that it was inserted for the convenience of the parties to fix the due date of the future annual premiums.

"We therefore conclude that the policy of insurance was made operative and put in effect by the short-term insurance rider and under all the terms of the policy the date of this instrument became the date of the policy. We are aided in reaching this conclusion by four decisions from other jurisdictions, namely, *Krebs* v. *Philadelphia Life Ins. Co.*, 249 Pa. 330 [Ann. Cas. 1917D, 1184, 95 Atl. 91], *Jefferson Standard Life Ins. Co.* v. *Wilson*, 260 Fed. 593, *Fox* v. *New York Life Ins. Co.*, 211 Ill. App. 406, and *American Nat. Ins. Co.* v. *Thompson*, (Tex. Civ. App.) 186 S. W. 254. The first two of these cases present facts identical with the one we are considering and the other two, very similar facts. In the case of *Krebs* v. *Philadelphia Standard Life Ins. Co.*, *supra*, the policy of insurance was issued upon application of the insured on July 19, 1913. It was dated on October 1, 1913. An endorsement providing for short-term insurance from August 1, to October 1, 1913, was placed upon the policy when issued. The policy was delivered prior to August 1, 1913, and the insured committed suicide on August 24, 1914. It contained a provision that 'self destruction, while sane or insane, within one year from the date hereof, is not a risk assumed by the company under this policy', which, in effect, is similar to the language used in the policy issued by appellant.

"The supreme court of Pennsylvania was of the opinion that if the date of the policy was to be considered as the date appearing on the main instrument, there would be no liability under its terms, the suicide of the insured having occurred within one year from that date, but that if its date were to be taken as the date of the short-term insurance endorsement, the liability of the company would be

fixed.   The court held that the short-term insurance endorsement did not constitute an insurance policy in itself, and that, therefore, it incorporated in its provisions enough of the terms of the main policy to make it a complete contract of insurance.   It having incorporated the provisions of this contract it must be held to have incorporated all of them not expressly excepted, as the company could not be permitted to select, as included the portions favorable to it and reject the others.   The court held that there was but one contract of insurance which was in effect on the date of the short-term insurance endorsement, and that as there was an ambiguity in the policy itself, such ambiguity must be construed against the company and in favor of the insured, and affirmed the judgment of the trial court against the insurer.

"In the case before us it would have been a simple matter for the appellant to have used such language in the several documents constituting the contract of insurance, so that there would have been no question of its meaning.   The company did not do so, and it cannot complain because the trial court, following the usual rule of construction, resolved such ambiguities against it and in favor of the insured."

Judgment affirmed.