**SOUTHWESTERN LIFE INS. CO. v. BROOKS.**

No. 13288.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 20, 1935.

Rehearing Denied Jan. 17, 1936.

Hamilton, Lipscomb & Wood, of Dallas, for appellant.

P. B. Cox, of Wichita Falls, for appellee.

DUNKLIN, Chief Justice.

The Southwestern Insurance Company has appealed from a judgment in favor of Mrs. Eva Brooks, on a life insurance policy issued to her husband, William Makie Brooks, who died on October 3, 1934.

The only two findings by the jury were, first, that the insured committed suicide; and, second, that the sum of $350 was a reasonable fee for plaintiff's attorneys for prosecuting the suit; and judgment was rendered in plaintiff's favor for $1,475.46, being the aggregate of the face of the policy, with interest, attorneys' fees and the statutory penalty of $120; for all of which plaintiff sued.

The policy sued on was issued by the insurance company at its home office in Dallas, Tex., and was executed by its president "as of the fifteenth day of October, 1933," but it bears an indorsement showing that it was registered and approved by R. L. Daniel, state life insurance commissioner, at Austin, Tex., on September 12, 1933, which was more than one month prior to its purported date. William Makie Brooks, the insured, resided in Wichita Falls, Tex., at the date of its issuance.

The policy embodied these stipulations:

"This policy is unrestricted as to travel, residence and occupation of the Insured and is Incontestable after the first policy year except for nonpayment of premiums. * * *

"If the Insured shall die by self-destruction while sane or insane, within one year from the date hereof, the amount payable under this Policy shall be the sum actually received by the Company for premiums thereon, and no more. * * *

"This policy and the written and printed application therefor, contained in two parts, constitute the entire contract between the parties thereto. A copy of the application is attached hereto. * * *

"The insurance hereby granted is term insurance for the first policy year, and limited payment life insurance thereafter and the premium for the first policy year is to be treated as a premium for one year's term insurance."

The annual premium specified in the policy was $19.72, payable in advance, but by a rider attached the company agreed to accept $1.65 per month.

The application made by the insured for the policy was dated at Wichita Falls, Tex., August 31, 1933, and following his signature thereto was the recommendation of the risk signed by J. P. Polhemus, agent of the company, who solicited the insurance. The application embodied these stipulations:

"I agree, in behalf of myself and of every person who shall have or claim any interest in any Policy issued in consequence hereof, as follows:

"(1) The Company shall incur no liability upon account of this application or any policy issued in consequence thereof until such policy shall be actually delivered to me and accepted by me during my life time and good health, and the first premium thereon shall be actually paid to and accepted by. the Company or by its duly authorized agent; but when so delivered and paid for, the policy shall relate back to its date, and the first policy year shall begin with that date. (2) This application, consisting of Parts 1 and 2, each signed by me, and the policy issued thereon shall constitute the entire contract; * * * (3) If within one year from the date of any policy issued hereon I shall die by self-destruction, sane or insane, the amount payable under such policy shall be the sum actually received by the Company for premiums thereon, and no more."

As shown in his application for insurance, William Makie Brooks was working for the Panhandle Refining Company in Wichita Falls for a salary. Joseph Ogden Polhemus, agent of the defendant who took the application, also resided in Wichita Falls.

On September 13, 1933, the defendant company addressed the following letter to J. O. Polhemus, its agent at Wichita Falls:

"Mr. J. O. Polhemus, 232 Bob Waggoner Bldg., Wichita Falls, Texas.

"Dear Sir: We regret very much that we are unable to issue the enclosed policy #525847 on the plan applied for, but trust that you will be successful in delivering it on the Economic Protection, without Disability Benefits or Double Indemnity.

"Frankly, we believe it would be to the applicants advantage to accept this insurance.

"If this policy is not accepted as issued, place a memorandum at the bottom of this letter and return it immediately; otherwise, the first premium will be listed for deduction from the employee's pay.

"Yours very truly,

"Group Department."

The policy referred to in that letter was inclosed therewith and it was delivered by Polhemus to William Makie Brooks on September 14, 1933, and accepted by him.

On August 31, 1933, Brooks made a written request to the Panhandle Refining Company to deduct from his salary each month $1.65 and forward the same to the defendant company to cover his monthly premium due on his policy; and upon the trial it was agreed by counsel for the defendant that the Refining Company accepted the request and made payments to the insurance company in accordance with the request.

Article 4733, subd. 3, Rev.Civ.St., reads: "Any company may issue a policy promising a benefit less than the full benefit in case of the death of the insured by his own hand."

The defense of suicide within one year from the date of the policy was urged in the answer to plaintiff's suit, based on that statutory provision. It is also insisted that the contract of insurance was unambiguous in its terms and therefore its meaning and legal effect could not be varied by extraneous evidence. And many decisions are cited to show that the parol evidence rule applies to stipulations in a contract that it will become effective from its date. Some of those authorities are, Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102, by the Supreme Court; Bement v. Trenton Locomotive & Machine Manufacturing Co., 32 N.J.Law, 513; Meridian Life Ins. Co. v. Milam, 172 Ky. 75, 188 S.W. 879, L.R.A.1917B, 103; Kurth v. National Life & Accident Ins. Co. (Tex. Civ.App.) 79 S.W.(2d) 338; Reynolds v. McMan Oil & Gas Co. (Tex.Com.App.) 11 S.W.(2d) 778; Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416, 419; Great Southern Life Ins. Co. v. Cherry (Tex.Civ.App.) 24 S.W.(2d) 512. Also 10 Tex.Jur. § 160, p. 274, from which we quote in part as follows: "If the written contract is clear and certain, it must be taken to express their intention and will be enforced as written, no matter what their actual intention may have been."

■ The parol evidence rule is as its designation imports, one of evidence and not one governing the construction to be given a written contract when the meaning of the parties thereto is disclosed by its terms.

■ An equally well-settled rule is that all parts of different written instruments constituting a part and parcel of a contract as a whole may be looked to in arriving at the intention of the parties.

■ The policy of insurance expressly stipulates that the application therefor was a part of the contract of insurance, and the same stipulation was embodied in the application. There can be no doubt that the policy took effect as a contract of insurance on September 14, 1933, when it was delivered and accepted by the insured followed by payment of the required premiums for one year from that date. That being true, it cannot be denied that the year beginning on that date was the "First policy year" within the meaning of the provisions in the policy that it would be "incontestable after the first policy year, except for non-payment of premiums."

The letter written by the Group Department of the insurance company to Polhemus instructing him to deliver the policy to the insured, explicitly stating "it will be in force from the date it is delivered to and accepted by the applicant," was delivered to the insured along with the policy and accepted with that understanding; that letter was admissible to show the intention of the insurer as to the date of the policy, and it did not necessarily contradict the words: "In testimony whereof, the Southwestern Life Insurance Company has caused this Policy to be signed in its behalf by its President and its Secretary and to be duly countersigned by a Registrar at Dallas, Texas, as of the fifteenth day of October, 1933," over the signature of the president of the company thereto. Such language was necessarily indefinite as to the date of the policy, and that uncertainty was expressly removed by the letter from the company accompanying delivery of the policy.

■ It is a further rule of universal application that any ambiguity in a contract of insurance, which is drafted by the insurance company, will be resolved in favor of the insured, if any of its provisions will warrant such a construction.

The amount of insurance was definitely stipulated in the policy, and it is our conclusion that the trial court did not err in the judgment rendered in plaintiff's favor, to the exclusion of the defense of suicide within one year from the purported date of the policy. We believe this conclusion is fully supported on general principles governing in such contracts and by the following decisions: Jefferson Standard Life Ins. Co. v. Myers (Tex.Com.App.) 284 S.W. 216; Myers v. Jefferson Standard Life Ins. Co. (Tex.Civ.App.) 271 S.W. 217; Jefferson Standard Life Ins. Co. v. Baker (Tex.Civ.App.) 260 S.W. 223 (writ of error refused); American National Ins. Co. v. Thompson (Tex.Civ.App.) 186 S. W. 254 (writ of error refused); Great Southern Life Ins. Co. v. Alcorn (Tex. Civ.App.) 80 S.W.(2d) 429 (writ of error refused); American National Ins. Co. v. Blysard (Tex.Civ.App.) 207 S.W. 162; Landrigan v. Missouri State Life Ins. Co. (Mo.App.) 234 S.W. 1042. And cases cited in those opinions.

Accordingly, all assignments of error are overruled, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

■ The statement in our original opinion that the letter written by defendant's Group Department to its agent, Polhemus, instructing him to deliver the policy enclosed therewith to the insured, contained the statement that "it will be in force from the date it is delivered to and accepted by the applicant," was an error. The letter did not embody that statement, but, as was shown without controversy, that statement was embodied in a slip which was delivered to the insured by Polhemus, along with the policy, and accepted by the insured at the same time. Hence that stipulation had the same force and effect as if it had been included in the letter of instruction to Polhemus authorizing him to deliver the policy.

As shown in the fourth quoted paragraph of the policy, the term "first policy year" is employed. And in the application for the policy, which is expressly made a part of the contract of insurance, it is provided that the policy would not become effective until its delivery and first premium paid to and accepted by the company. The further provision, "but when delivered and paid for, the policy shall relate back to its date, and *the first policy year* shall begin with that date" (italics ours), manifestly refers to delivery of the policy subsequently to its date; but that

provision and the stipulation immediately preceding it, in connection with the defendant's letter to Polhemus, show clearly that the parties intended the contract to become effective on September 14, 1933, when it was delivered and first premium paid by defendant's acceptance of assignment of wages of the insured as payment of the premiums for the first and subsequent months, rather than on the subsequent date of October 15, 1933. To say the least, the contract may reasonably be construed as evidencing an intention of the parties that the one-year suicide period should begin with the date when the contract became effective rather than on the subsequent date of October 15, 1933, as insisted by appellant, and that construction should be indulged in favor of the insured rather than the strict construction invoked by appellant.

The motion for rehearing is overruled.