[Civ. No. 22384. Second Dist., Div. Two. Nov. 13, 1957.]

CHARLES BYRON OSBORNE et al., Plaintiffs and Appellants, v. THE SECURITY INSURANCE COMPANY (a Corporation) et al., Respondents; FARMERS INSURANCE EXCHANGE, Defendant and Appellant.

Hagenbaugh & Murphy and Sigurd E. Murphy for Plaintiffs and Appellants.

Early, Maslach, Foran & Williams and Harry Boyd for Defendant and Appellant.

Eugene S. Ives for Respondents.

ASHBURN, J.—Action for declaratory relief determining the respective duties of three insurance companies with respect to a personal injury action growing out of a collision between a Buick automobile and a Chevrolet on Mill Creek Road in the mountains of San Bernardino County, on August 9, 1952. The plaintiffs and one of the insurers appeal from the judgment.

The Buick was occupied at the time of the accident by five persons named Smith. The Chevrolet was owned by Rex Thwaits and driven by Charles Byron Osborne, both of whom were minors. All of the Smiths sued for damages for personal injuries. They joined as defendants Rex Thwaits and his mother, Chris Thwaits, Charles Byron Osborne and his parents, Harold G. Osborne and Arminta M. Osborne. The Thwaits had or thought they had liability coverage under a combination automobile liability policy Number CA 713138 issued jointly by The Security Insurance Company and The Connecticut Indemnity Company, in which the named insured was Chris Thwaits, the mother of Rex Thwaits. The Osbornes had two liability policies, Numbers 9162959 and 16082208 issued by appellant Farmers Insurance Exchange to Harold G. Osborne, the father of Charles and husband of Arminta. The Thwaits and Osbornes called upon their respective in-

surers to defend the Smith action. This the Security and Connecticut refused to do, claiming that the Thwaits policy is void and that if valid its terms do not protect Rex Thwaits or the Osbornes. Farmers took the position that any coverage afforded to Harold G. Osborne and Arminta M. Osborne by its policies is excess insurance only and does not cover Charles Byron Osborne at all. The trial court made holdings which require a reversal and can be best clarified when considered separately.

### SECURITY-CONNECTICUT POLICY

First as to the claims of the Thwaits under the Security-Connecticut policy. The Chevrolet was owned by Rex Thwaits, aged 17, for whom his mother bought it as a present when he graduated from high school; it was registered in his name as owner; it was a new car; his mother traded a 1949 used Ford on account of the purchase price and executed an agreement to pay to General Motors Acceptance Corporation the balance of the purchase price; Rex also signed this document. The insurance policy was already in existence, covering the Ford and designating Chris Thwaits, the mother, as named insured. On the day of its purchase, June 11, 1952, the coverage was transferred to the Chevrolet but the policy remained in the name of Chris Thwaits and Rex was not specifically mentioned therein as additional insured or otherwise. The insurance companies, Security and Connecticut, contended that the policy was thenceforth void because Chris Thwaits was not the owner of the Chevrolet and had no insurable interest in it.

### Insurable Interest of Chris Thwaits

The trial court did not pass upon this question but declared that the policy did not cover any liability of Rex Thwaits and that there was no duty upon the insurance companies to defend him; that they had a duty to defend Chris Thwaits because it was alleged in the Smith personal injury complaint that she was the owner of the car and that it was being driven by her agent, the truth or falsity of these allegations being immaterial. Appellants claim that the court's silence as to the issue of insurable interest was a failure to find upon a material issue and prejudicial error. We are constrained to agree.

■ It is the duty of the court hearing an action for declaratory relief to make a complete determination of the controversy. (*American Enterprise, Inc.* v. *Van Winkle*, 39

Cal.2d 210, 219 [246 P.2d 935].) As to the prejudicial nature of failure to find upon a material issue in any case, see *Parker* v. *Shell Oil Co.*, 29 Cal.2d 503, 512 [175 P.2d 838] ; *DeBurgh* v. *DeBurgh*, 39 Cal.2d 858, 873 [250 P.2d 598]. The grievous nature of this error will become apparent as the discussion proceeds.

 The rule that the purchaser of an insurance policy must have an insurable interest in the subject matter at the time of procuring the insurance pervades the entire field of insurance law, not excepting that of automobile liability protection. (44 C.J.S. § 175, p. 869.) The object to be obtained by this rule, the reason for its being, is avoidance of wagering contracts. (Williston on Contracts (Rev. Ed.), § 1665A, pp. 4705-4706; 4 Appleman on Insurance Law and Practice, § 2121, pp. 18-19; 77 A.L.R. 1256, Anno.) Hence any kind of an interest in the risk attendant upon the existence or use of the insured property is enough to negate a wager and support the policy. (2 Joyce Law of Insurance (2d Ed.), § 888, p. 1920; Rest., Law of Contracts, § 520, comment e, p. 1008; 77 A.L.R. 1257, Anno.) This principle has been carried into sections 250 and 281 Insurance Code, which respectively read as follows: ''§ 250. *Events subject to insurance.* Except as provided in this article any contingent or unknown event, whether past or future, which may damnify a person having an insurable interest, or create a liability against him, may be insured against, subject to the provisions of this code.'' ''§ 281. *Definition.* Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest.''

 Mrs. Thwaits, though she had given the car to her son, signed a conditional sale contract and separately obligated herself to pay to General Motors Acceptance Corporation the full balance of the purchase price; the destruction of the vehicle would subject her to substantial loss in the absence of protecting insurance. Also, she had signed her minor son's application for a driver's license and thus rendered herself liable for damages for injuries to person or property caused by his negligence arising out of driving the vehicle upon a highway (Veh. Code, § 352(a)). Mrs. Thwaits had an undoubted right to insure against this risk, especially as the car was intended primarily for the son's use upon the highway. The argument that it does not appear that he was driving (actually or constructively) or even present at the time of the

accident seems to be contrary to the record and in any event is misplaced. ■ In all cases other than life insurance the question of insurable interest presents the matter of protection against possibilities, contingencies and hazards, not inevitable events. Mrs. Thwaits was insuring against these hazards generally, not that of one specific trip. ■ That she had a cognizable insurable interest appears from perusal of the following authorities, all of which proceed upon the basis that ownership is not an exclusive test of insurable interest: *Davis* v. *California Highway Indem. Exch.*, 118 Cal. App. 403, 405-406 [5 P.2d 447]; *American Surety Co.* v. *Heise*, 136 Cal.App.2d 689 [289 P.2d 103]; *Fageol T. & C. Co.* v. *Pacific Indem. Co.*, 18 Cal.2d 731, 738 [117 P.2d 661]; *Pratt* v. *Hanover Fire Ins. Co.*, 50 R.I. 203 [146 A. 763, 764]; 28 Cal.Jur.2d § 508, p. 256; 44 C.J.S. § 177, p. 783; 5 Am.Jur. § 513, pp. 793, 794; 77 A.L.R. 1256, Anno.) It thus appears that Mrs. Thwaits had an insurable interest in the subject matter of the insurance, the policy is not void and the court should have so determined.

### Security-Connecticut Obligation to Protect Chris Thwaits

The court properly held that Security and Connecticut were obligated to defend Mrs. Thwaits because she was charged in the personal injury action with ownership of the Chevrolet and operation of same through her agent. ■ That obligation is measured by the terms of the policy applied to the allegations of the complaint whether they be true or false. (*Ritchie* v. *Anchor Cas. Co.*, 135 Cal.App.2d 245, 250 [286 P.2d 1000]; *Lamb* v. *Belt Cas. Co.*, 3 Cal.App.2d 624, 630 [40 P.2d 311].) ■ An insurer who has undertaken such defense is bound by the judgment (45 C.J.S. § 933, p. 1055), and if the defense proves unsuccessful the insurer must pay the judgment. This latter phase of Mrs. Thwaits' right to protection was not declared in the judgment but that should have been done.

### Security-Connecticut Obligation to Protect Rex Thwaits

Security and Connecticut were obligated to protect Rex Thwaits. Their refusal to do so stemmed, at least partially, from the faulty view that the policy is void. ■ Reliance is also placed by respondents upon III of the insuring agreements, which says: "With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'Insured' includes the named Insured and also includes any person while using the automobile and any person

or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named Insured or with his permission.''

Mrs. Thwaits was named insured; Rex Thwaits and Charles Osborne were using the automobile; Rex was responsible for its use by Osborne; and that use was with the permission of Mrs. Thwaits, the named insured. The trial judge found: ''that the words 'using the car' clearly means driving the car; that Rex Thwaits was not driving the car on August 9, 1952, at the time of the accident.'' Also, ''[a]s the Named Insured, Chris Thwaits, was not the owner of the 1952 Chevrolet automobile, she could not give permission for its use.'' It is immediately apparent that herein some fundamental principles of insurance law were overlooked.

■ They are thus stated in *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437 [296 P.2d 801] : ''It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.] ■ If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citation.] If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured.'' The language of the policy is presumed to be that of the insurer and when ambiguous it is to be construed in such manner as to provide full coverage of the indicated risk rather than to narrow the protection. ■ If the insurer would create an exception to the general import of the principal coverage clauses, the burden rests upon it to phrase that exception in clear and unmistakable language. (*Pendell* v. *Westland Life Ins. Co.*, 95 Cal.App.2d 766, 770 [214 P.2d 392].) If this is not done any ambiguity or uncertainty is resolved in favor of the policyholder. ■ The courts will not sanction a construction of the insurer's language that will defeat the very purpose or object of the insurance. (*Miller* v. *United Ins. Co.*, 113 Cal.App.2d 493, 497 [248 P.2d 113] ; *Narver* v. *California State Life Ins. Co.*, 211 Cal. 176, 180 [294 P. 393, 71 A.L.R. 1374].) Indeed an exception must be couched in terms which are ''clear to the ordinary mind'' (*Pendell* v. *Westland Life*

*Ins. Co., supra,* at p. 770), or any doubts as to meaning will be resolved against the insurer.

▮ That the word "using" is not necessarily synonymous with "driving" plainly appears from the discussion in *Souza* v. *Corti,* 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861], which arose under section 402, Vehicle Code, the permissive use statute. The owner had entrusted his car to his son to be used by him; the son loaned the car to his friend who was driving at the time of the accident. Section 402 imposes upon the owner liability for negligence of one "using or operating" the car with his permission express or implied. The court drew a clear distinction between using and operating and held that the son was at all times using the car though not in physical possession of it or driving it at the time of the accident. The concurring opinion of Mr. Justice Schauer is to the same effect. In the case at bar it was stipulated at the trial that "at the time of the accident of August 9, 1952, and immediately prior thereto, Charles Byron Osborne, the driver of the 1952 Chevrolet automobile previously referred to, asked permission of Rex Thwaits to drive said Chevrolet automobile at the time of the accident referred to." ▮ Rex Thwaits thus became legally responsible for the use of the car by Charles Osborne, for it was with his permission and in his immediate presence; he became liable on two theories, permission and agency. (See 7 Cal.Jur.2d § 321, p. 194; *Souza* v. *Corti, supra,* 22 Cal.2d 454, 461-462; Prosser on Torts (2d Ed.), p. 368; *Ray* v. *Hanisch,* 147 Cal.App.2d 742, 748 [306 P.2d 30].)

▮ The idea that Mrs. Thwaits, though she was the named insured, could not give permission to use the Chevrolet because she was not the owner also disregards principles governing construction of insurance policies. The language in question plainly refers to actual consent, not some theoretical concept. Mrs. Thwaits had told Charles Osborne, who was an intimate friend of her son and a daily visitor in their home, that he could drive the Chevrolet any time he wished, and had done so a dozen or more times; she was present at the start of the particular trip and gave Osborne permission to drive. This was permission in fact, enough to satisfy the terms of the policy and to preclude any inquiry whether she had a right to control the car.

This is not a question of imputed liability under the consent statute (Veh. Code, § 402), but if it were, the case of *Patchen*

v. *Eichmeyer*, 101 Cal.App.2d 652 [225 P.2d 976], would be persuasive. In that case a minor had purchased a motorcycle which he kept at the home of his parents where he resided; the mother had signed his application for a permit to operate. At page 655 the court said: "The matter of the parents' consent to the son's operation of the motorcycle is likewise a question of fact. From evidence that the parents had permitted William to buy and use the vehicle for more than a year and that the motorcycle could have been taken away from the son if the parents objected to its use, coupled with the fact that the mother had signed the application to operate a motor vehicle, an inference of consent to its use can hardly be deemed unsupported." In the present instance Rex, aged 17, lived at home and kept the Chevrolet there; his mother had signed his application for a driver's license and undoubtedly had the legal right to control her son's use of the vehicle either through causing his license to be cancelled (Veh. Code, § 353), or exercising general parental control over him (37 Cal.Jur.2d § 10, p. 149), such as forbidding his use of it.

*Norris* v. *Pacific Indem. Co.*, 39 Cal.2d 420 [247 P.2d 1], is not opposed to the views just expressed. In that case a permittee, who had been instructed to let no one else drive the car, loaned it to a friend who when driving was involved in an accident. It was held that he was not an additional insured within the terms of a covering insurance policy because he had no permission in fact, express or implied, from the owner. The court distinguished *Souza* v. *Corti, supra,* 22 Cal.2d 454, upon the ground that it involved imputed liability under section 402, Vehicle Code, saying at page 424: "Section 402 is not involved in the present case. The plaintiffs are not concerned with fastening imputed liability on the owner. They are not the beneficiaries of any statutory created liability. The plaintiffs seek to apply the policy language as a source of financial discharge of Irvin's [driver's] liability to the persons injured through his own negligence." At page 426: "The matter of the owner's imputed liability is not involved here; and the question of the operator's coverage under the owner's policy was not involved in the Souza case. Since there is neither express nor implied permission for Irvin's use of the automobile, he is not protected by the omnibus clause in the policy of the owner."

*Wilcox* v. *Berry*, 32 Cal.2d 189, 191 [195 P.2d 414], does

not support respondents' position. That case presented the question of whether a wife was liable under section 402, Vehicle Code, for her husband's negligence in driving an automobile which was owned as community property, this upon the theory that she had consented thereto. It was held that he had full control of community property and she could not give him permission to do what he already had a right to do. That has no pertinence to the interpretation of an insurance policy.

Rex Thwaits was covered by the Security-Connecticut policy and it should have been so adjudged.

### Security-Connecticut Obligation to Protect Charles Byron Osborne

The Osbornes claim that they are also covered by the said Security-Connecticut policy. The court held against this contention and ruled that there was no duty on either of those insurers to defend any of the Osbornes.

First, as to Charles, the minor son, who was driving the Chevrolet at the time of the accident. He falls within this phrase of III of the policy (quoted above), "any person while using the automobile . . . with his [named insured's] permission." While the significance of the word "using" is not confined to operating, the latter act undoubtedly is included within the term "using." Again, Charles Osborne is covered because condition (8) of the policy[1] incorporates by reference the financial responsibility law of this state (Veh. Code, §§ 410-423.1, especially § 415). Since the decision of *Continental Cas. Co.* v. *Phoenix Constr. Co.*, *supra*, 46 Cal.2d 423, 434, it has been established law that the provisions of that statute prescribing the terms of motor vehicle liability policies become implied covenants of all such insurance. One of those requirements is: "Such policy shall insure the person named therein and any other person using or responsible for the use of said motor vehicle or motor vehicles with the express or implied permission of said assured."

---

[1] "8. *Financial Responsibility Laws—Coverages A and B.* Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. . . ."

(Veh. Code, § 415(a)(2).) Clearly, Charles Osborne was using this Chevrolet and was doing so with the express permission of the assured. He is entitled to defense by Security and Connecticut and protection to the extent specified in the statute.

### Security-Connecticut Obligation to Protect Senior Osbornes

The parents, Harold G. Osborne and Arminta M. Osborne, are likewise protected by III of the same policy. The son, Charles, falls within the description "any person while using the automobile" with the permission of the insured. The parents had signed his application for a driver's license which he had at the time of the accident, thus becoming liable for his negligence (Veh. Code, § 352) subject to the statutory $5,000 and $10,000 limits. They therefore fall within the policy phrase "any person . . . legally responsible for the use thereof" because Charles was using it and they were obligated under the statute. They are entitled to a defense and to protection against any adverse judgment up to the maximum limit of the statute. The contrary holding of the trial court was erroneous.

### Re Farmers Insurance Exchange Appeal

The court found that Farmers is not bound to defend or protect Charles Byron Osborne under its policy and no party claims error in that ruling. As to his parents the court ruled that Farmers had a duty to defend them because they signed Charles' application for a driver's license and the Smith complaint alleged that the Chevrolet was being driven by Charles as their agent; "that these allegations are sufficient allegations of a claim for 'damages . . . caused by accident and arising out of . . . use . . . of the automobile,' as set forth in coverages A and B of Insuring Agreement I of said policies which is made applicable to 'any other automobile' with respect to the 'Named Insured' and his 'spouse' by Insuring Agreement V relating to 'use of other Automobiles' as these words are used in said policies." It is urged by appellant Farmers that the court erred in failing to declare that its policies furnish only excess coverage for Mr. and Mrs. Osborne and that liability under the Security-Connecticut policy should be exhausted before that of Farmers becomes available. We have held that these two Osbornes are covered by the Security Connecticut policies and hence this argument as to excess insurance of the Farmers policy. Coverages A and B

of insuring agreement I, also Condition (16) and insuring agreement V(a) thereof are set forth in the margin.[2]

It is essential to determination of the question of excess insurance to ascertain whether Farmers policies do protect the senior Osbornes with respect to this accident. This we must do independently of any concessions of counsel as to the legal effect of the policy (*Desny* v. *Wilder,* 46 Cal.2d 715, 729 [299 P.2d 257]). If the parents are not covered, the question of excess insurance does not arise. Careful scrutiny of the quoted portions of the policy discloses that the insurer studiously refrained from protecting any driver of an automobile other than the named Ford except Harold G. Osborne and his spouse, or to protect them or either of them against liability for driving such "other automobile" by any other person. The statute (Veh. Code § 352) imposed liability upon them for the son's negligence, unless perchance he was acting as the agent or servant of another person (subd.

---

[2] "*Coverage A*—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

"*Coverage B*—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile."

"(16) *Other Insurance—Coverages A, B, C, D, E, F, and F-1.* If the insured has other insurance against a loss covered by this policy the Exchange shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to said automobiles or otherwise."

"V. *Use of other automobiles.* If the named insured is an individual who owns the automobile classified as 'pleasure and business' or husband and wife either or both of whom own said automobile, such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisons: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes (1) such named insured, (2) the spouse of such individual if a resident of the same household and (3) any other person or organization legally responsible for the use by such named insured or spouse of an automobile not owned or hired by such other person or organization. Insuring Agreement III, Definition of Insured, does not apply to this insurance."

(d)), but that fact does not enlarge the carefully restricted coverage of the insurance policy. This line of thought is emphasized by the discussion in *Norris* v. *Pacific Indem. Co., supra,* 39 Cal.2d 420, 424. The question of excess insurance did not properly arise and the failure to determine it did not constitute error.

No other points require discussion.

The judgment is reversed with instructions to the lower court to amend the findings and conclusions and enter judgment consonant with the views herein expressed.

Fox, Acting P. J., concurred.

A petition for a rehearing was denied December 6, 1957, and respondents' petition for a hearing by the Supreme Court was denied January 6, 1958.