Coos,
No. 5049.

TRAVELERS INSURANCE COMPANY

*v.*

STEPHEN D. KIPP *& a.*

Argued October 1, 1963.
Decided December 30, 1963.

*Burns, Bryant & Hinchey* and *E. Paul Kelly* (*Mr. Kelly* orally), for the plaintiff.

*Walter D. Hinkley* for the defendant Stephen D. Kipp, furnished no brief.

*John E. Gormley* (by brief and orally), for the defendants Carr and Stone.

*George P. Cofran* and *L. Wilder Quint* (*Mr. Quint* orally), for the intervenor, Merchants Mutual Insurance Company.

PER CURIAM. On the evening of August 21, 1959 the defendant Stephen D. Kipp, who resided with his parents in Lancaster, had the use of the automobile insured by the plaintiff with the express permission of his father, the owner and named insured, for the purpose of taking a girl to a movie, with instructions to be back by eleven P. M. It developed that the girl could not accompany Stephen, and he later left Lancaster with four boys, all minors, with whom he visited a place across the Canadian border, some sixty miles away. Ensuing events are described in the Trial Court's findings.

"Each of the boys had something to drink at the 'Line House,' and Stephen Kipp, after some discussion with the other boys, decided that he should not drive and asked Peter Carr to drive. On the return trip from Hereford, Quebec, to Lancaster, New Hampshire, Peter Carr did drive, with Stephen Kipp seated in

the center front seat beside the driver. Reynold Stone was on the outside, and Daggett and Tibbetts were seated in the rear seat; there were several stops en route, on one of which occasions Stephen Kipp was sick. There was some evidence that on the return journey Peter Carr had successfully avoided striking a cow that was on the highway, at which time Stephen Kipp congratulated Peter Carr for not hitting the cow. There is evidence that Stephen Kipp advised Peter Carr to drive slowly.

"After the Kipp automobile re-entered New Hampshire and had arrived in the town of Stratford, the automobile went off the road and crashed into a tree, resulting in physical injuries to Reynold Stone and Stephen Kipp.

"On December 29, 1959, the petitioner made payments to, or on behalf of the defendant, Stephen Kipp, for medical expenses incurred by him as a result of the injuries sustained in the accident."

By the policy issued to William H. Kipp the plaintiff undertook to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . sustained by any person . . . arising out of the . . . use of the owned automobile . . . ." The policy defines "Persons Insured" in part as follows: "The following are insureds under Part I: (a) with respect to the owned automobile, (1) the named insured and any resident of the same household, (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured . . . ."

While the briefs and oral arguments have been devoted largely to discussion of the "omnibus" provision of the policy contained in sub-paragraph (2) of the definition quoted above and of the nature of the permission granted to Stephen D. Kipp by the named insured William H. Kipp, there is no occasion to rely upon this provision to determine the plaintiff's obligation to Stephen D. Kipp. It is plain that Stephen was a "person insured" under subparagraph (1) of the definition quoted above, since he was admittedly a "resident of the same household" as the named insured. See Parcher, The New Family Automobile Policy, 24 Ins. Counsel J. 13 (1957); Comment, The Family Automobile Policy, 37 Neb. L. R. 581, 583 (1958).

It is equally clear that since Stephen was not the operator of the vehicle when the accident occurred, any liability on his part

must arise out of the operation of the vehicle by Carr, who was driving it at Stephen's request, in his presence, and for his use. In this connection the Trial Court found and ruled as follows pursuant to the requests of the defendants.

"11. The defendant, Stephen Kipp, operated the automobile on the trip to Hereford. Prior to starting back to Lancaster from Hereford, he felt he was unable to drive the car on the return trip and, thereupon, requested the defendant, Carr, the most experienced motor vehicle operator in the group, to operate the automobile on his (Stephen's) behalf and as his agent on the way back to Lancaster. Subsequently, and by the time the group left Hereford to return to Lancaster, the condition of the defendant, Stephen Kipp, had worsened and, upon leaving Hereford and at all times thereafter on the trip back to Lancaster, he was unable to properly operate the automobile. 12. The defendant, Carr, operated the automobile on the return trip to Lancaster and at the time of the accident. At all times while Carr was so operating the automobile, Stephen Kipp was seated in the center front seat next to Carr who, at all times while so operating, was doing so subject to the direction and control of Stephen Kipp, on his behalf and as his agent and servant. 29. At the time of said accident, the owned automobile was being used by the defendant, Stephen Kipp, a resident of the same household as the named insureds."

It thus appears that Stephen's liability for any negligence on the part of Carr is liability arising out of Stephen's "use" of the insured vehicle within the meaning of the plaintiff's policy. Carr's operation of the vehicle cannot be said to have terminated Stephen's "use." The use made on the return trip from Canada was a part of the use determined upon by Stephen, who remained in control of the vehicle. It never became an independent use by Carr, on his own behalf, since he was operating the insured vehicle in the right of Stephen.

In maintaining that the policy does not afford coverage, the plaintiff relies upon the case of *Rogillio* v. *Cazedessus*, 127 So. 2d 734, as the "only . . . case . . . on this particular issue" disclosed by the research of counsel. In that case the Louisiana court was called upon to construe a policy the terms of which closely resembled the provisions with which we are presently concerned. Although the court held that the son of the named insured, as a "resident of the same household" as the named

insured, was himself an insured according to the plain terms of the policy, yet it held that no coverage was provided because the use being made of the vehicle when the accident occurred was by a permittee of the son for the exclusive and independent benefit of the permittee, at a time when the son was not present in the vehicle. The distinction between that case and this is readily apparent. Since the son was not the "named insured," his consent to operation by another did not make the other an insured within the meaning of the "omnibus" clause of the definition of "insured person."

The view which we adopt as applicable to the case before us finds recent support in a decision of the Court of Appeals of Maryland in *Melvin* v. *American Automobile Insurance Co.*, (Md. App.) 194 A. 2d 269. There the son of the named insured was killed while another boy was driving the insured vehicle. In considering whether this was "actual use" by the decedent, the court there said: "We see no reason to limit the meaning of the words 'actual use' to the operation of a vehicle, where the operator is the agent or servant of another and subject to his immediate and present direction and control. There appears to be no case that has construed the words in the context of this policy, but there are cases in which the word 'use' has been so construed. In Hardware Mut. Casualty Co. v. Mitnick, 180 Md. 604, 607, 26 A. 2d 393, 394, Chief Judge Marbury, for this Court, said that 'using a car in the ordinary acceptation of the words seems clearly to include a borrower's making use of it by riding while driven by another.' See also Arcara v. Moresse, 258 N. Y. 211, 179 N.E. 389; Brown v. Kennedy, 141 Ohio St. 457, 48 N.E. 2d 857; Maryland Casualty Company v. Marshbank, 226 F. 2d 637, 639 (C. A. 3d); Osborne v. Security Insurance Company, 155 Cal. App. 2d 201, 318 P. 2d 94, 99 and Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co. of New York, 33 N. J. 507, 166 A. 2d 355 . . . In the instant case Barry was covered as a resident of his father's household, and did not need to rely upon the permission granted . . . Here the test is use rather than permission. . . . We find it unnecessary to discuss the scope of the permission granted, since that is merely an alternative ground of liability in the instant case." *Melvin* v. *American Automobile Insurance Co., supra,* 194 A. 2d at 271, 272. For other authorities adopting the same view of the meaning of "use," see *Am. Employers Ins. Co.* v. *Insurance Co.,* 93 N. H. 101; *Persellin* v. *State*

*Automobile Ins. Assoc.,* 75 N. D. 716. Annots. 160 A.L.R. 1195, 1213, 5 A.L.R. 2d 600, 648, *s.* 18; 7 Appleman, Ins. Law and Practice, *s.* 4316. In view of the conclusion reached, it is unnecessary to determine the effect of the endorsements providing "extended non-owned . . . coverage" to Stephen D. Kipp, by name, and for an additional premium.

Since the plaintiff is obligated to defend the pending actions and to satisfy any judgments within the policy limits because of its undertaking to indemnify Stephen D. Kipp, no occasion is presented to determine whether like obligations would have existed with respect to Carr, had Stephen not been present in the automobile. Nor are we called upon to consider the effect of the Financial Responsibility Act (RSA 268:16 VI) since coverage is afforded by the express terms of the policy. For the same reason most of the requests which were transferred without ruling require no discussion.

The issue presented concerning the effect of the payment made to Stephen D. Kipp under Part II of the plaintiff's policy relating to "Expenses for Medical Services" appears to require no extended consideration. The plaintiff argues that this payment cannot be construed as a waiver or estoppel against the insurer with respect to its rights under Part I of the policy hereinbefore determined. As the defendant points out, its obligations under Part II are independent of its liability under Part I. 8 Appleman, Ins. Law and Practice, *s.* 4896; Annot. 42 A.L.R. 2d 983. Since we hold that the policy affords coverage, the question of waiver or estoppel is immaterial. However, the defendant Reynold J. Stone likewise claims to be entitled to benefits under Part II of the policy. His rights thereunder depend upon the plaintiff's undertaking to make specified payments to a person injured "while occupying (a) the owned automobile, while being used by . . . any resident of the same household" as the named insured.

In view of our interpretation of the same language as used in Part I of the policy, it follows that the defendant Reynold J. Stone is entitled to the benefits of Part II of the policy within the limit of $500. See defendants' request No. 30.

A declaratory judgment should be entered in favor of the individual defendants in accordance with this opinion.

*Judgment for the defendants.*