[Civ. No. 6663.   Third Dist.   June 1, 1942.]

DENVER SEVIER, Appellant, v. C. E. ROBERTS, Respondent.

Denver Sevier in pro. per. and John F. Quinn for Appellant.

Blaine McGowan for Respondent.

THOMPSON, Acting P. J.—This is an appeal from a judgment entered in favor of defendant upon his cross-complaint and against the plaintiff.

The amended complaint of appellant sought damages as against respondent in the sum of $5,418.32 suffered as a result of the alleged false and fraudulent representations made to appellant by respondent in connection with the sale to appellant of a wholesale candy business which had been owned and operated by the respondent.

Respondent denied the allegations of fraudulent represen-

tation to appellant and by way of cross-complaint asked for judgment in the sum of $3,135.52, the sum alleged to be due under the contract of sale, together with interest thereon at the rate of 7 per cent per annum from September 16, 1938, the date of the said contract of sale. Respondent also asked judgment for the additional sum of $209.35, alleged to be due and owing from appellant as a result of sale to appellant of certain office equipment, fixtures and other personal property. The judgment from which this appeal is prosecuted was entered in full accordance with the demands of the cross-complaint.

For a considerable period of time prior to September 16, 1938, the date of the execution of this contract of sale, which gives rise to the present litigation, the respondent, C. E. Roberts, conducted in the city of Eureka, and throughout adjacent territory, a wholesale candy business. He was engaged principally in the distribution of candy to the retail trade, which was effected by salesmen who took the products on consignment and made deliveries in their territory by the use of trucks owned by the respondent. Just prior to the sale of this candy business to appellant the respondent had been operating his business in the manner stated and had working for him as salesmen, a Mr. Reynolds, and a Mr. MacMillan. These men had distributed the products of the candy business by the use of two trucks, one a Chevrolet and the other a Dodge, both belonging to the respondent, or at least as the evidence discloses they have continuously been registered in the name of respondent as legal owner. A third truck used in the distribution of the candy products was at all times before and subsequent to the execution of the contract of sale registered in respondent's name as sole owner. On July 9, 1938, approximately two months prior to the execution of the contract of sale of the candy business, a written agreement was entered into between respondent and Wallace MacMillan, one of the aforementioned candy distributors. This agreement provided for the distribution by MacMillan of the respondent's products and also provided for the sale to MacMillan by respondent of one truck which was to be used for distribution purposes. The agreement failed to make any provision for the purchase price of this truck and was also silent as to any payments which were to be made. The respondent testified that Mr. MacMillan was to have paid him $25 a month in satisfaction of the purchase price of this truck.

An agreement in the form of a conditional sales contract was also entered into between respondent and the other distributor mentioned, Mr. E. W. Reynolds. This agreement, executed sometime prior to September 16, 1938, was by the language used, a conditional sale of a motor vehicle, although there was a failure to fill in the blanks describing the vehicle as well as an omission to provide for the purchase price or make any provision for purchase payments. The vehicle contemplated by this agreement was the Dodge truck which Mr. Reynolds used for distribution on his route. The respondent testified that Reynolds was to have made payments of $50 per month on the purchase price of this truck.

The sale of the candy business to appellant, which included the transfer of the three trucks mentioned, was executed in the following form and language:

"Eureka, Calif.
September 16, 1938

"Clifford E. Roberts does hereby sell, transfer and convey unto Denver Sevier all the wholesale candy business and distributing business for many years and now conducted by him under the name 'C. E. Roberts' in the Counties of Humboldt, Del Norte and Mendocino with headquarters in Eureka, California, and all together stock of merchandise on inventory Sept. 16, 1938 with the three trucks and vehicles used by said Roberts, together with the good will of said business; said business being a wholesale business of *$8135.52* of which said sum of $4000 is hereby paid by check, receipt whereof is hereby acknowledged. The balance the sum of *$4135.52* is to be paid out of the profits of said business without injuring the same, but said sum of $4135.52 shall be paid within one year. * * *

Denver Sevier
Clifford E. Roberts''

The name "Sevier" and the initials of Roberts appeared on the contract opposite the language "out of the profits of said business without injuring the same," which provision had been deleted by pen and ink. There was a conflict in the evidence as to the time when this provision was eliminated from the contract. It appears, however, that such provision relating to the payment of the balance of the purchase price for the candy business was eliminated prior to the signing of the contract of sale by the parties.

Prior to the sale of the candy business on September 16,

1938, Mr. Roberts was approached by a Mr. Guthrie, who later managed the business for appellant, and a number of discussions took place in regard to the sale of such business. The appellant was present on some of these occasions. On the day of the execution of the contract, September 16, 1938, which took place at the home of Mr. Roberts, there was present, the respondent, the appellant, Mr. Guthrie, and Mrs. Roberts. The respondent testified contrary to the appellant and Mr. Guthrie, as to any reference being made on this occasion to the trucks. He stated that although the pink slip certificates were at that time in his home, no mention was made of reference to either the pink certificates or the trucks. Mr. Roberts testified that the appellant understood that the three trucks and the distribution routes covered by the trucks were to be "lumped in at the three thousand dollar sum," and that the inventory of the business made up by himself and Mr. Guthrie did not include mention of the routes in computing the figure ($3,000) placed opposite the word "Trucks" because the good-will of the routes had no value and he did not know how they could be evaluated. The respondent stated that he gave the contracts for the purchase of the two trucks by MacMillan and Reynolds to appellant and that he intended to place the pink slip certificates in the bank in escrow to be held until appellant had paid the note for the purchase price of the business in full. The pink slips covering title to all three of the trucks were placed in the Bank of Eureka by respondent on December 14, 1938. These certificates of title were accompanied by an instruction that the bank should hold them for delivery to appellant upon his payment of the balance due under the contract of sale of September 16, 1938.

The appellant testified that he was unaware at the time he signed the contract of sale for the purchase of the candy business that either Reynolds or MacMillan had contracts for the purchase of the two trucks mentioned. He stated that respondent informed him that MacMillan and Reynolds were paying $25 and $50 a month respectively as rental money for the use of the trucks and that the contracts in regard to the trucks were simply a matter of convenience for the purpose of placing responsibility in their use with MacMillan and Reynolds rather than upon respondent. The respondent admitted upon examination that he had not informed appellant of the fact that the names of MacMillan and Reynolds

were upon the pink certificates as registered owners of the two trucks, even though these pink certificates were at the home of respondent at the time of the execution of the agreement. The appellant, apparently, has not seen any of the three pink certificates at any time, either before or since the signing of the agreement. He testified that he was to have received these pink slips the next day after the signing of the agreement and that he made a number of requests to respondent thereafter for a delivery to him of such pink certificates but that they were not delivered to him.

The $4,000 mentioned in the contract of sale was paid to respondent by check at the time of the signing of the agreement and on the 17th day of October, 1938, the appellant made a further payment of $1,000 under the contract to respondent.

Included in the inventory of respondent's business, which was made up for the purpose of the intended sale to appellant, were two bills receivable, one amounting to the sum of $842.32, represented to be an asset of the business and an alleged indebtedness from E. W. Reynolds for merchandise sold and delivered to him; and the other an alleged indebtedness from Wallace MacMillan in the sum of $337.54 on account of merchandise sold and delivered to him. The appellant alleged fraud in connection with these two accounts listed in the inventory, in that E. W. Reynolds in fact only owed respondent the sum of $200 and Wallace MacMillan the sum of $286.54. The appellant testified in regard to these accounts as follows:

"A. He said that Mr. Reynolds would dispute that amount, probably, claiming that it was not correct, but he would have a settlement with Mr. Reynolds and whatever amount they agreed on would be the amount; if it was less than the $842.32 I was to have a credit, and the same way with Mr. MacMillan."

The testimony of respondent in regard to any adjustment between the parties as to these two accounts is as follows:

"Q. Now you have also listed here in your account, Mr. Roberts, the Reynolds account, $842.32. A. That's right. Q. That represented purchases by Reynolds from yourself. Now did you tell Judge Sevier that that account might be subject to deductions? A. I did. . . . I told Mr. Sevier if there was any discrepancy in the accounts either way we stood willing to make the adjustment. . . . Q. Did you ever talk to Mr. Reynolds about it? A. I did. Q. And why is

it, Mr. Roberts you have not had the opportunity [to adjust the account] up to the present time? A. Mr. Reynolds wouldn't cooperate with me. . . . Q. And at the present time are you holding this account of $842.32 as far as Mr. Sevier is concerned? A. Yes sir. Q. On the ground Mr. Reynolds wouldn't cooperate? A. Yes sir.''

The amended complaint alleges that respondent made false and fraudulent representations in that he represented that he was the owner of the two trucks driven by Reynolds and MacMillan, whereas in fact he had sold these trucks to those same parties and was not in a position to sell them to appellant; that he had represented the Chevrolet truck which stood in respondent's name to be in good running order and suitable for the candy business, whereas in fact such truck was in disrepair and not fit for such business; that while promising so to do the respondent has failed to deliver to appellant the pink slip certificates evidencing title to the three trucks; and that respondent made false representations in connection with the Reynolds and MacMillan accounts as heretofore set forth.

As a basis for a second cause of action, the appellant alleges that respondent represented that he was the owner of the two trucks operated by Reynolds and MacMillan and that these two trucks were renting for $25 and $50 a month, respectively, and resulting in an income to the business of $75 per month, whereas these statements made by respondent were not true and were known by respondent to be untrue.

The answer of respondent denies that the three motor vehicles or trucks described in the complaint were listed as being of the value of $3,000 and in this connection alleges that the trucks and selling routes were valued at $3,000. The respondent denied that he was not the legal owner of the trucks, but alleged that there were agreements for the purchase of such motor vehicles, which fact was known by appellant prior to the execution of the contract of sale, and that he was able and willing to deliver the pink slips to such motor vehicles upon the payment by appellant of the balance due upon the purchase price of the candy business. The answer of respondent stated that such pink slips were held as security for the payment of the purchase price. Respondent also denied the allegations contained in the second cause of action.

The respondent alleged by way of cross-complaint that

there was due and owing under the contract of sale the sum of $3,135.52, together with interest thereon at the rate of seven per cent per annum from September 16, 1938, and there was also due in addition the sum of $209.35, for the sale and delivery to appellant of certain office equipment and personal property. As stated, the judgment was in accordance with the prayer of the cross-complaint.

We are of the opinion that the trial court was in error in granting the prayer of the cross-complaint, and that the judgment from which this appeal is taken must be reversed.

Although there is substantial evidence in support of the findings in regard to the alleged fraudulent representations in connection with the sale of the candy business, and it may be concluded that respondent did not intentionally mislead appellant as to any of the conditions connected with the sale of such business, we are firmly convinced that respondent is not entitled to recover any sum which might be due on account of the sale of the three trucks. It is also the opinion of this court that, before respondent may have judgment against appellant for any sum that might be due under the contract of sale of September 16, 1938, it shall first be determined just what sums of money were due and payable to respondent by E. W. Reynolds and Wallace MacMillan, respectively, on the two accounts in question, which were listed in the inventory.

The language of the contract of sale which was executed on September 16, 1938, indicates quite clearly that a present and complete passing of title to everything included and specified as belonging to the candy business was intended to be effected as of that date. Included in the contract and specified were the three trucks in question. Consequently, the contract of sale having purportedly passed title in these trucks to appellant, without limitation or condition, it was the duty of respondent to immediately properly endorse the certificates of ownership, transferring legal title in the trucks to appellant and deliver the same to him. Respondent's failure in this regard constituted a violation of section 176 of the Vehicle Code, which provides as follows:

"It is unlawful for any person to fail or neglect properly to endorse and deliver the certificate of ownership to a transferee who is lawfully entitled to a transfer of registration."

It should be noted that the foregoing section does not require any demand for endorsement and delivery on the

part of the transferee. The language used is "fail or neglect."

The respondent having wrongfully failed to comply with the provisions of section 176 of the Code, it is our opinion that the language of section 186 of the Vehicle Code should be given its full force and effect, resulting in denying to respondent the right to recover any sums of money which might be due on the purchase price of the trucks. This latter section of the Vehicle Code provides that:

"No transfer of the title or any interest in or to a vehicle registered hereunder shall pass nor shall delivery of any said vehicle be deemed to have been made and any attempted transfer shall not be effective for any purpose until transfer of registration is made and the department has issued a new certificate of ownership and registration card with respect thereto as provided herein . . . ."

We are not deciding that non-compliance with section 186 of the code shall in every situation prevent a seller from recovering as against the buyer the purchase price due on the sale of a motor vehicle. Compliance with section 176 of the code on the part of the seller, that is, endorsement and delivery of the certificate of ownership to the transferee, even though the buyer fails to comply with section 186 by obtaining reissuance in his own name might be deemed sufficient compliance on the part of the seller so as to enable him to maintain an action for the purchase price of the vehicle as against the purchaser. The respondent, however, cannot place himself in that more favored position, as he has failed to take any steps toward compliance with the necessary provisions of the Vehicle Code.

The right of respondent to recover any money due on account of the sale to appellant of the three trucks involved in this action is in our opinion determined by the decision in *Ludwig* v. *Steger,* 99 Cal. App. 235 [278 Pac. 494], which was rendered by this court. In that case suit was brought upon a promissory note given in payment for the purchase price of an automobile. The evidence disclosed that the seller had failed to endorse or transfer the certificate of ownership (pink slip) to the purchaser, as was the situation in the present case. The seller testified in the Steger case, *supra,* at page 236, that he had the "pink slip" at his home and that although he had forgotten to transfer it to the purchasers, they had said they would stop to get it but had neglected to do so. The seller of the automobile testified as follows:

"It has been an oversight . . . I guess, never thought about the pink certificate I had up there at the house until they brought the case in."

Section 45(e) of the Vehicle Act which was in effect at the time of the action in the Steger case, and which section has been superseded by the present section 186 of the Vehicle Code, provided as follows:

"Until said division shall have issued said new certificate of registration and certificate of ownership . . . delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose."

Section 45½ of the Vehicle Act, also in effect at the time of the action in that case, made it a misdemeanor for "Any person who refuses or neglects to deliver a certificate of ownership to a transferee entitled thereto under the provisions of this act . . . ."

This court, in applying the then existing provisions of the Vehicle Act in determination of the seller's right to recover the purchase price of the automobile, denied such right in the following language found at page 237 of the opinion:

"An illegal act cannot become the basis of a valid consideration for a sale or transfer of property, even though the act is merely *malum prohibitum*. . . .

"Since the certificate of ownership of the automobile, the sale of which furnishes the only basis of consideration for the promissory note involved in the present action, was never signed or transferred by the vendor and the motor vehicle department has consequently never issued a new certificate of ownership, the title to the machine did not pass to the defendants, but still remains in the owner, Scott. Hence, the note was without consideration and void."

The language of section 186 of the Vehicle Code is even stronger against the right of a seller to recover the purchase price of a motor vehicle where there has been a failure of compliance thereunder, than was the language of section 45(e) of the Vehicle Act, as the language used in section 186 is "No transfer of the title *or any interest* in or to a vehicle . . . shall pass" whereas the pertinent language of section 45(e) was "title thereto shall be deemed not to have passed." ▮ More important, however, than a comparison

of the language of the present applicable sections of the Vehicle Code with those comparable sections which applied in determining the result in the Steger case, *supra,* is the fact that in the present case the respondent did not simply forget to endorse and deliver the certificates of ownership but intentionally and by his own admission placed them in a bank to be held in escrow as security for full payment of all money due under the contract of sale. This was a clear violation of section 176 of the Vehicle Code and the provisions of section 186 of this same code apply to prevent him from recovering any moneys on account of the purported sale of the three trucks.

In 37 American Law Reports, at page 1466, numerous authorities are cited in support of the rule of law that failure to comply with the pertinent motor vehicle statutory provisions shall preclude an action for the purchase price of the car.

In answer to the contention of respondent that appellant waived his right to an endorsement and delivery to him of the "pink slip" certificates, we believe it sufficient to quote from the language used by this court in the Steger case, wherein a similar defense was there raised. This court stated in that regard, at page 239 of the opinion, as follows:

"The respondents did not waive their defense or right to the certificate of ownership signed by the vendor. It was the duty of the owner to deliver this certificate to the purchasers. This was essential to a valid transfer of title."

Again we refer to respondent's action in placing the "pink slip" certificates in escrow as security for payment. This constituted more than a failure to properly endorse and deliver the certificates to the purchaser. It was affirmative action which placed the certificates out of the hands of the appellant, and respondent can hardly contend that appellant waived his right to their proper endorsement and delivery.

Although the inventory of respondent's assets, taken shortly before or at the time of the consummation of the sale of the candy business, lists the trucks at $3,000 value, there is a conflict in the evidence as to whether the $3,000 did not also represent the value of the "truck routes" as well as the actual value of the trucks. Additional evidence should be received by the trial court to determine this question. The burden is upon respondent to prove that the

$3,000 figure placed opposite the word "trucks" in the inventory included value other than that represented by the trucks themselves. If the respondent is successful in proof of this matter, the appellant shall then be only entitled to a deduction from the purchase price of the candy business, measured by the market value of the respective three trucks as of the date of the execution of the contract of sale. If the evidence fails to support the contention of respondent in regard to the inclusion of value for the "truck routes," the appellant shall be entitled to a deduction from such purchase price of the candy business to the extent of $3,000, the inventory value of the three trucks. The three trucks are the property of respondent and he is entitled to their possession regardless of the conclusion in regard to the problem stated. The respondent is also entitled to recover as an offset the reasonable value of the use of the three trucks by appellant in the candy business.

In regard to the two accounts receivable, which were listed in the inventory as due and payable by E. W. Reynolds and Wallace MacMillan, respectively, it was the duty of respondent, when apprised of the fact that the amounts were contested by the debtors, to furnish appellant with satisfactory and conclusive proof of the exact amounts due and owing. The credit had been extended by respondent to the two debtors and he was in the best position to prove the amounts due. The respondent agreed with appellant that he would make an adjustment on these accounts for all sums not actually due thereunder. There was considerable discrepancy in the amount listed in the inventory as due and owing by Reynolds and the sum he admitted was due to respondent. Evidence should be received by the trial court for the purpose of determining the exact amounts due under these accounts receivable. If the figures placed in the inventory are incorrect the appellant is entitled to a further deduction from the purchase price of the business to the extent of the discrepancy in the amounts listed in the inventory and the actual sums due and owing by E. W. Reynolds and Wallace MacMillan, respectively.

Appellant makes no claim of error in the entry of judgment for the sum of $209.35, for the sale and delivery to him of certain office equipment. It is presumed that respondent made proof of a valid claim in this regard.

We believe that we have sufficiently answered all material issues raised by this appeal.

The judgment is reversed.

Tuttle, J., and Steel, J. pro tem., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 29, 1942. Carter, J., voted for a hearing.