[Civ. No. 6723.    Fourth Dist.    Feb. 19, 1962.]

ROBERT S. MARTIN et al., Plaintiffs and Respondents, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellant; ASSOCIATES DISCOUNT CORPORATION, Defendant and Respondent.

460

Burch, Gregory & Platt and Oakes & Horton for Defendant and Appellant.

Eugene A. Horton and Howard B. Turrentine for Plaintiffs and Respondents.

GRIFFIN, P. J.—Plaintiffs-respondents Robert S. Martin and wife brought this action for breach of contract and for declaratory relief against defendant, cross-defendant and appellant State Farm Mutual Automobile Insurance Company, a corporation (hereinafter referred to as "State") and defendant, cross-complainant and respondent Associates Discount Corporation (hereinafter referred to as "Associates"), alleging generally that on February 12, 1959, plaintiffs purchased and took possession of a 1956 Lincoln automobile; that thereafter, on April 3, 1959, plaintiffs executed a contract of

insurance for said automobile with defendant State (a copy of which insurance policy was attached to the complaint and marked exhibit A); that about May 21, 1959, said automobile was totally demolished as a result of going over an embankment from a parked position; that plaintiffs made a claim for their loss arising from said occurrence and defendant State refused to pay plaintiffs the amount of their loss or any part thereof, and said defendant has denied any contract liability to plaintiffs under the terms of said policy of insurance. Damages in the amount of $2,650 are sought.

In the second cause of action, they seek declaratory relief and allege that a controversy exists between plaintiffs and defendants, in that, as purchasers and possessors of said automobile, and the named insured in said policy of insurance, they are entitled to full payment for collision loss to said vehicle; that State contends there is no liability to plaintiffs or anyone under its provisions; and that Associates asserts a right to a portion of such moneys as may be payable under the terms of said policy. Judgment against State is sought for $2,650 and the determination that Associates has no interest in the proceeds.

Defendant State, by answer, admits the execution of the policy pleaded and that a controversy does exist as to its liability. By way of affirmative defense, it alleged that the policy application did state that plaintiffs were the owners of the car subject to the lien of Associates in the sum of $2,258.88; that they relied on that statement and did issue the policy; that in fact on the date of the application, February 16, 1959, and issuance on April 3, 1959, plaintiffs were not the owners of it but title was vested in another, and that this was unknown to plaintiffs, State and Associates; that such policy was issued under a mutual mistake of fact; and that an offer to return premiums paid was made. It further seeks a determination whether plaintiffs were in fact the owners at that time and, if not, the issuance of an order for defendants to return $71.70 premium paid on the policy and, if so, a judgment that defendant State is only liable for $2,145, that being the amount of the actual cash value of the car, less $50 deductible, and that the balance, $2,095.00 be paid jointly to plaintiffs and Associates as their interests may appear; that the car be returned to State and, if not, payment be further reduced by the salvage price of $239.

Associates denies that plaintiffs were damaged in the sum

of $2,650, admits other allegations, and, by way of cross-complaint against State, alleges that on February 12, 1959, plaintiffs purchased the car from "Bargain Center," a dealer, on a conditional sales contract (exhibit A attached to the answer) and on February 16, 1959, Associates purchased the contract from Bargain Center for a valuable consideration; that at the time of the purchase of the car by plaintiffs, State issued a policy of insurance naming Associates as one of the insured therein; that at the time of the accident, there was due on the conditional sales contract from plaintiffs the sum of $2,070.64; that demand was made on State for that amount and it refused to pay. Judgment is sought against State for this sum.

The trial court found generally for plaintiffs, except it found plaintiffs' damages to be $2,496 instead of $2,650, as alleged; that an actual controversy did exist; that plaintiffs did purchase the car from the dealer known as "Bargain Center," which one Frank Volpicella, the registered owner, had left there for sale, and had executed a power of attorney to said dealer authorizing it to sell said car and do all things necessary to transfer title; that after selling said car to plaintiffs on a conditional sales contract, Bargain Center did then sell its interest in said contract to Associates and plaintiffs made two payments on it; that on taking possession of the car from the dealer, plaintiffs insured it for collision loss with State; that in connection with said purchase, plaintiffs represented themselves as the owners, except that said purchasers were being financed through Associates and that the insurance policy reflected said representations; that plaintiffs as well as Associates had an insurable interest and each was covered by the policy as written; that there was a total destruction of the car and a value loss of $2,496, less $50 deductible, payable to plaintiffs and defendant Associates under the terms of the policy; that from the net return of $2,446, $1,883.71 is payable to Associates, which represents the balance due on the contract, and that $562.29 is payable to plaintiffs. It was further found that at the time of the collision, the registered title was actually in the name of Volpicella and the legal owner was Commercial Credit Corporation; that the dealer Bargain Center did not take the necessary steps to transfer the registration and legal ownership title pertaining to said car with the California Department of Motor Vehicles. Judgment was entered accordingly.

State claims on its appeal that the questions presented are: (1) Did Associates have an insurable interest in the automobile? (2) Was there any evidence to support the finding that the value of the automobile on the date of the collision loss was $2,496? (3) Was there any evidence to support the finding that the sum of $562.29 is payable to plaintiffs as the contract purchasers of the automobile?

Associates contends it did have an insurable interest. Plaintiffs Martin agree with State's claim that Associates had no insurable interest, but argue that they (Martins) did have such interest and accordingly disagree with the amount awarded to Associates. They further believe that they should be reimbursed for the total claimed loss, figured on the basis of $213 automobile trade-in, cash down-payment of $525 and payments on purchase contract of $188.24, less $50 deductible, totaling $876.24, instead of $562.29 based on their proportionate share of the actual value of the car when destroyed. Appellant State claims the evidence does not support the findings and that proffered findings presented by it should have been adopted.

## FACTS

There appears to be little or no dispute as to the actual facts produced by the evidence. One Tommy Wright purchased the car involved in this appeal from a used car dealer under a conditional sales contract. He was a minor at the time and the conditional sales contract was signed by and the automobile registered in the name of his brother-in-law, Frank Volpicella. Wright took possession of it and made all payments due under the conditional sales contract. The contract was assigned to Commercial Credit Corporation and a policy of automobile insurance was issued by Allstate Insurance Company to Volpicella and Commercial Credit Corporation, as their interests might appear. After some delay, the pink slip was issued to Commercial Credit Corporation. In 1959, Wright enlisted in the army. He and Volpicella took the car down to Bargain Center and left it there with one Joe Moody who agreed to sell it for them. To facilitate the sale, Volpicella signed a power of attorney authorizing Moody to sell the automobile on the condition that the proceeds of the sale would be used first to pay off the balance owing to Commercial Credit Corporation under the conditional sales contract and any amount remaining would be divided between Moody and Wright. Previously, Volpicella had obtained a policy of

automobile insurance on the car from Allstate Insurance Company. After leaving the car with Moody, he told Allstate to cancel his policy. They did so but they failed to notify Commercial Credit Corporation.

In February 1959, plaintiffs entered into a conditional sales contract with Bargain Center for the purchase of the automobile. They paid Bargain Center $525 cash and were given a credit of $213 for a 1951 Mercury which they traded in on the automobile. The balance remaining under the contract was $2,258.88. Installment payments were in the amount of $94.12 per month.

Although this conditional sales contract was sold by Bargain Center to Associates for $1,798, the balance owed to Commercial Credit Corporation under the conditional sales contract previously signed by Volpicella was not paid by Bargain Center as agreed, and the registered ownership in the automobile was never transferred by it to the plaintiffs or to Associates. Bargain Center went into bankruptcy and some of the persons involved were prosecuted.

On February 16, 1959, plaintiffs executed and delivered to State an application for automobile insurance, representing that they were the owners of the automobile except in respect to an encumbrance in favor of Associates. State was recommended to plaintiff by Bargain Center for insurance coverage. Thereafter, State issued the policy of insurance, the subject of this appeal. Plaintiffs paid $188.24 on the account of the conditional sales contract to Associates. In May 1959, the accident happened. In due course, plaintiffs presented a claim under the collision coverage of State's policy, which was denied for lack of coverage. On October 26, 1959, Allstate Insurance Company paid to Commercial Credit Corporation the sum of $1,849.10, that being the balance due on the date of the loss under the conditional sales contract signed by Volpicella. It appeared that Allstate was obligated to make this payment because they failed to give Commercial Credit notice of the cancellation of the policy. On November 5, 1959, the certificate of ownership, or pink slip, of the automobile was transferred to Allstate Insurance Company by Commercial Credit Corporation and thereafter Allstate received $205 for the salvage value of the automobile. The record indicates that Volpicella's name was forged to the pink slip by someone. The trial judge spent some time and effort, without avail, in an endeavor to name the person.

## INSURABLE INTEREST

Insurance Code, section 281, provides that: "Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest."

Section 282 thereof provides that: "An insurable interest in property may consist in:

"1. An existing interest;

"2. An inchoate interest founded on an existing interest; or,

"3. An expectancy, coupled with an existing interest in that out of which the expectancy arises."

Section 283 provides that: "A mere contingent or expectant interest in anything, not founded on an actual right to the thing, nor upon any valid contract for it, is not insurable."

Section 286 provides that: "An interest in property insured must exist when the insurance takes effect, and when the loss occurs, but need not exist in the meantime . . ."

These two latter sections seem to narrow the provisions of section 281. (See 32 So.Cal.L.R. 230.)

State's claim that Associates had no insurable interest is predicated on *Napavale, Inc.* v. *United Nat. Indem. Co.,* 169 Cal.App.2d 119 [336 P.2d 984]. In that case, however, the seller of the car had no title or authority to sell it. In fact, he appeared to be a thief, and since a thief has no title, the insured had no better title.

In 44 Corpus Juris Secundum, section 177, page 873, it is said that: "An insurable interest in a motor vehicle exists where the insured derives a benefit from the existence of the vehicle or would suffer a loss from its destruction."

That: "Where a motor vehicle is the subject of a conditional sales contract, both the purchaser and the seller have an insurable interest in the vehicle . . ."

And that: "Where the seller of a motor vehicle under a conditional sales contract assigns the contract, both the seller and the assignee have an insurable interest in the vehicle until the purchase price is paid."

In some jurisdictions, a sale of an automobile not made in compliance with the applicable statutes is void and such a sale passes no insurable interest to the purchaser. (*Personal Finance Co. of Missouri* v. *Lewis Inv. Co.* (Mo.App.) 138 S.W.2d 655; 44 C.J.S. sec. 177, p. 873.) We find no decision of our courts or state law which goes this far. In *Parke* v.

*Franciscus,* 194 Cal. 284, 285 [228 P. 435], it was held that the failure of the transferee of the "ownership" in a car to procure the registration certificate properly endorsed, as required by section 8 of the Motor Vehicle Act of 1919, does not make the sale void *ab initio,* but in the terms of the statute it is incomplete, and under the Motor Vehicle Act of 1919, while the requirement of a statement of transfer of a car by a dealer is mandatory, a failure to comply therewith does not make the sale invalid. *Sevier* v. *Roberts,* 52 Cal.App. 2d 403 [126 P.2d 380], does hold that a transferor may not enforce payments of such a contract of purchase where he wrongfully fails to comply with Vehicle Code, sections 176 and 186 (1942) in reference to registration. It is there stated, at page 411, that:

"We are not deciding that non-compliance with section 186 of the code shall in every situation prevent a seller from recovering as against the buyer the purchase price due on the sale of a motor vehicle. Compliance with section 176 of the code on the part of the seller, that is, endorsement and delivery of the certificate of ownership to the transferee, even though the buyer fails to comply with section 186 by obtaining reissuance in his own name might be deemed sufficient compliance on the part of the seller so as to enable him to maintain an action for the purchase price of the vehicle as against the purchaser."

In the instant case, the certificate of registration was endorsed by the registered owner, Volpicella, and turned over to Bargain Center, together with a power of attorney, to effect the sale. Volpicella's pink slip, or certificate of ownership, remained with Commercial Credit Corporation, apparently unendorsed by Volpicella. Plaintiffs were given the endorsed certificate of registration at the time of sale and sought the pink slip but were told by Bargain Center that the registration of the sale would be taken care of by it and that plaintiffs would soon be receiving the new registration slip and the new pink slip would be forwarded to Associates. Plaintiffs were at that time given, by Bargain Center, a sticker indicating a temporary printed number, to attach to their car, which sticker was good for 30 days. At the end of that time they inquired of Bargain Center about it and were told to await a further time because of delay in the Department of Motor Vehicles. Plaintiffs inquired there and were told not to worry about it because it would be forwarded as soon as it was

processed. They also inquired of Associates and were told the same thing.

From the testimony of all witnesses, most of the credit companies, in dealing with dealers on such sales, take assignments of conditional sales agreements on cars with the reliance that the dealer will forward the certificate of registration and certificate of ownership to the Department of Motor Vehicles within the required time and credit companies generally allow from 30 to 60 days for the return of new certificates and that insurance on such sales is obtainable and issued immediately without regard to verification of immediate compliance with the Vehicle Code by the dealer. Apparently that was what happened here. One of the questions here arising is whether this negligence of Bargain Center in failing to pay off Commercial Credit Corporation, obtain the certificate of ownership and register it and the certificate of registration with the Department of Motor Vehicles precludes it and its assignee, Associates, from claiming payments due under the contract of sale or from obtaining any relief from plaintiffs or from State under the terms of its policy. ▇ The usual rule in reference to assignment of conditional sales contract of automobiles is that a party to a contract may assert as against an assignee of the other party any right which he could assert against the latter, regardless of whether such right conforms or does not conform to the face of the contract, unless special recitals in the contract contain an express allowable waiver. (5 Cal.Jur.2d, § 59, p. 344; *Parker* v. *Funk,* 185 Cal. 347, 348 [197 P. 83].) The exhibits before us indicate no such waiver. ▇ As to plaintiffs, the innocent purchasers, *Dennis* v. *Bank of America etc. Assn.,* 34 Cal. App.2d 618 [94 P.2d 51], is factually similar to the instant action. There the court held that while Vehicle Code, section 186, provides that no transfer of title or of any interest in or to a registered vehicle shall pass and that delivery shall not be deemed made until transfer of registration is accomplished and a new certificate of ownership is issued, the provisions thereof cannot be availed of by a transferor who "may be estopped by law to deny a transfer," and while innocent parties who suffered damage by reason of noncompliance with said section by the transferor and transferee can take advantage of its provisions, it would be abhorrent to justice and equity to allow a transferor to profit by his own fraud in dealing with his transferee. So it is clear that we should view

this transaction as being one between Bargain Center and plaintiffs. If Bargain Center, instead of Associates, had presented a claim against State for the unpaid portion of its purchase agreement contract, the first question that would be presented would be: Was it, at the time of the loss, an enforceable agreement between Bargain Center and plaintiffs so as to give Bargain Center an insurable interest? Under the evidence presented, the answer would be no. In the first place, Bargain Center at that time could not produce legal title to the car under any circumstances because that title was vested in Commercial Credit Corporation. Secondly, Bargain Center absconded with the proceeds of the transaction and failed to perform its duty and promise to pay off the obligation due to Commercial Credit and to transfer both certificate of ownership and of registration, in violation of Vehicle Code, section 5901, and accordingly deprived plaintiffs of their rightful title as registered owners. In effect, Bargain Center, through its assignee, now wants to be reimbursed by State for its defalcation and failure to perform its duty. While Associates claims to be the innocent purchaser for value, the general principle applies that it stands in the shoes of the seller and the contract is subject to any attack that could be made against the assignor. We therefore conclude, as between State and Associates, Associates had no enforceable insurable interest at the time of the loss and was not covered by the policy.

As to plaintiffs, in *Tri-State Mutual Grain Dealers Fire Ins. Co.* v. *Morris*, 268 F.2d 956, it was held that under California law, a purchaser of premises in possession although the sale had not been closed had an insurable interest. This was an action on a fire insurance policy. In *Davis* v. *Phoenix Ins. Co.*, 111 Cal. 409 [43 P. 1115], it was held that it is not necessary that the insured person have a legal interest in the property insured; but an equitable interest is sufficient, and it is not required that there be a valid equitable title, provided the insured has possession and use, and has a direct pecuniary interest in the preservation of the property, and will suffer a pecuniary loss as an immediate and proximate result of its destruction. This was also an action upon insurance against loss for fire. It also held that one who is in full possession and enjoyment of property under a contract of sale of the premises by the owner, upon which he has paid part of the purchase price, with an option to complete the purchase, upon

the completion of which he would be entitled to a conveyance of the legal title, has an insurable interest in the property; but his insurable interest is limited to the amount advanced by him upon the option, at the date of the insurance.

In the instant case, Bargain Center, the seller of the car, was in *possession* of it under the authority of the registered owner and had authority of the registered owner to sell the car and did in fact sell it to plaintiffs. It is not necessary for the insured to have legal title to the property which was damaged; an insurable interest is sufficient. (*Fageol Truck & Coach Co.* v. *Pacific Indemnity Co.,* 18 Cal.2d 731, 738 [117 P.2d 661].) ▮ The word "owner," as applied to motor vehicles, is commonly understood to designate the person in whom title is vested either as legal owner or as registered owner. (*Napavale, Inc.* v. *United Nat. Indem. Co., supra,* 169 Cal.App.2d 119.) In *Dunne* v. *Phoenix Ins. Co.,* 113 Cal.App. 256 [298 P. 49], the court held that a purchaser of personal property has an insurable interest therein, although he has not fully paid the purchase price nor acquired title.

▮ Volpicella, as registered owner, through Bargain Center, the dealer, did assign such interest as he had to plaintiffs and Bargain Center assigned the contract of purchase to Associates. It does appear that neither Associates nor Bargain Center, under the case of *Sevier* v. *Roberts, supra,* 52 Cal. App.2d 403, could maintain an action for payments due.

State has taken the position, and rightfully so, that plaintiffs did in fact have an insurable interest under the subject policy of insurance and did acquire from Bargain Center the interest of Tommy Wright and Frank Volpicella. However, it contends that that interest was subject to an encumbrance of Commercial Credit Corporation, the legal owner, and that the only amount payable under its policy to plaintiffs was the value of plaintiffs' interest in the car.

Conceding that plaintiffs did have some insurable interest in the car, which reasonably appears, the facts show that to safeguard that interest plaintiffs did apply to State for full coverage of loss of it. They did, in good faith, state that they were the owners, subject to financing by Associates, and the policy so indicated. State made full investigation of the representations made and issued the policy. We are convinced that plaintiffs had an insurable interest covered by the policy. (*Motors Insurance Corp.* v. *Turner,* 90 Ga.App. 6 [99 S.E.2d 503].) The trial court specifically found that the

conditional sales contract gave plaintiffs an insurable interest in the policy. This finding has evidentiary support.

The remaining question then involves the question of apportionment and the amount of judgment rendered. The court found the value of the car prior to the accident to be $2,496 and that there was a *total loss* of the car; that $2,496 was due plaintiffs and Associates, less $50 deductible under the policy, which totaled $2,446; that $1,883.71 was the sum remaining due on the contract, and $562.29, the difference, was payable to plaintiffs. Plaintiffs claimed that they should have allowance for the value of a car traded in on that car, in the sum of $213, a cash down payment of $525, and two payments made on the purchase contract by plaintiffs totaling $188.24, amounting to $926.24, less $50 deductible, or a total of $876.24.

▪ The loss payable on an insurance policy is not the cost of the car to plaintiffs but its fair market value just prior to its destruction. (*Davis* v. *Phoenix Ins. Co., supra,* 111 Cal. 409; Ins. Code, § 2071.) Plaintiffs operated the car for a period of five months and accordingly depreciation must be considered. State claims that there was no satisfactory evidence produced as to the fair market value of the car just before the accident which would support the finding of value at $2,496. The evidence of its value at that time was not satisfactory and the trial court so indicated.

The evidence shows that the plaintiffs agreed to buy the car for $2,496; that they were allowed $213 thereon for the turn-in price of another car plus $525 cash; that in addition plaintiffs paid certain sums toward a health and accident policy plus transfer fees, insurance on the car, etc., all included in the contract balance, payable $94.12 per month.

A claim adjuster for State stated that in his opinion the value of the car just prior to the accident was $2,095 and that he received a salvage bid on the car of $205. Plaintiffs claimed damages in the sum of $2,650 on account of destruction and loss of the car. State, by its answer, admitted that plaintiffs made claim of such amount and then alleged that if defendants were found to be the owners of the car and the court determined that defendant State was liable to plaintiffs for $2,145, this being the actual cash value of the car at the time of the accident (with a $50 deductible allowance, or $2,095), this sum should be ordered paid jointly to plaintiffs and Associates as their interests may appear and as proved, and that the payment be credited on State's receiving title

and possession of the car, and in case possession could not be delivered the payment of $2,095 be further reduced by the sum of salvage totaling $239. Associates denies the amount of claimed damage of plaintiffs and alleges that the sum due under its conditional sales contract was $2,070.64. The court allowed $1,883.71, which amount appears to be supported by the evidence.

It will be noted that the trial judge allowed, as a total loss under the policy, the sum of $2,496, the exact cost of the car to plaintiffs, without consideration of the other expenditures noted and without consideration of the salvage value. Plaintiffs provided no testimony as to the car's fair market value just prior to the time of the accident. They stated that they obtained bids on it for salvage purposes after the accident but did not state the amounts. ▮ A statement of the purchase price set forth in a contract of sale is not substantial evidence of the fair market value five months later and upon which a finding could be made as to value when the evidence on that issue is controverted. (*Collins & G. R. Co.* v. *Beasley,* 36 Ga.App. 241 [136 S.E. 167]; *National Automobile Insurance Co.* v. *Vaughn,* 98 Ga.App. 446 [106 S.E.2d 87]; *Glouberman* v. *Coffey,* 138 Cal.App.2d Supp. 906 [292 P.2d 681].) In *Wood* v. *Moore,* 64 Cal.App.2d 144, 150 [148 P.2d 91], the court said that: ". . . it is well settled that evidence of cost, *uncontradicted* by other evidence, is sufficient to support a finding of value." (Citing cases.) (Italics ours.)

See also *Sanders* v. *Austin,* 180 Cal. 664, 666 [182 P. 449], where it is said: "It may be that testimony as to what the plaintiff paid for the machine was not competent and that if it had been objected to the objection would have been good. Such objection would have been good, however, not because such testimony was of no probative value, but because, standing alone, it was of slight probative value only, and to make it more than this would involve an inquiry into a collateral question, namely, whether or not the plaintiff had paid too much for the car."

In that case, it appeared that the plaintiff had paid some $345 for the second-hand car, and that he was actually using it in his business. The court said that: ". . . the testimony being in, it has sufficient probative value in the absence of any counter-testimony whatever to sustain the finding of the court [citing cases], particularly in view of the further circum-

stances that no question was raised at the trial as to the value of the automobile . . .''

In view of these rules, and since the question of value just prior to the accident was an issue, and contradicted by other testimony, it appears that the purchase price of the car, five months prior to the accident, is insufficient to support the finding that its value was $2,496 just prior to the accident. It further appears that the court did allow $50 deductible in making the award. The evidence of value nearest that figure was the testimony of plaintiff Robert S. Martin. He testified that the State adjuster offered him a check for $2,100 in settlement of the claim and that he refused it because he wanted the car replaced and he thought the car ''was worth more than that.'' No figure was indicated. The only other evidence of value was the testimony of the adjuster who said that in his opinion it had a value of $2,095, less $50 deductible, just before the accident. The adjuster admitted an offer of settlement of $2,045 had been made by him, but said it was predicated on the fact that Associates held the pink slip and that plaintiffs held the registration certificate and also upon the fact that State would have the salvage value of $205.

Under the circumstances related, it is difficult to determine who was entitled to the salvage value. The car was, rightfully or wrongfully, transferred to Allstate Insurance Company, which sold it for salvage. Someone may have a cause of action involving this transfer. Since the court found that as to plaintiffs there was a *total loss*, we will not determine the question as to who would be entitled to the salvage credit if a recovery is obtained. It therefore appears from the evidence that a judgment based on the fair market value of the car could not exceed the sum of $2,100. Plaintiffs' interest in the car would be $2,100, less the sum found due on the contract ($1,883.71), or a balance of $216.29. The judgment against State in favor of plaintiffs should be reduced from $562.29 to $216.29, and as thus reduced it should be affirmed. Plaintiffs to recover costs on this appeal in respect to State. Judgment for Associates against State should be reversed. Costs awarded accordingly.

Judgment in favor of Associates on their cross-complaint and against State is reversed. Judgment in favor of plaintiffs and against Associates is affirmed as modified. Plaintiffs to recover costs on this part of the appeal.

Shepard, J., and Coughlin, J., concurred.