[Civ. No. 60557. Second Dist., Div. Two. Apr. 20, 1981.]

BILLIE D. RILEY, Plaintiff and Appellant, v.
MID-CENTURY INSURANCE EXCHANGE, Defendant and
Respondent.

COUNSEL

Perona & Langer and Deborah R. Reid for Plaintiff and Appellant.

Berger, Kahn, Shafton & Moss, Vicki Lynn Gutin and Anthony E. Shafton for Defendant and Respondent.

OPINION

**ROTH, P. J.**—For purposes of disposition of the controversy between them by way of summary judgment in the trial court, appellant Riley and respondent Mid-Century Insurance Exchange entered into a joint stipulation of facts to the following effect.

Mid-Century had been Riley's automobile insurer since 1976. Shortly prior to Memorial Day (late May) 1977, Riley contacted her Mid-Century agent and advised him that she was acquiring a 1976 Cadillac Seville. The agent told her at that time that she would be automatically covered for 30 days after acquiring the vehicle.

Riley was planning to dispose of the vehicle then described in her policy, a 1973 Cadillac de Ville, within the thirty days in order to avoid

payment of premiums on two vehicles, a procedure approved by the Mid-Century agent.

On June 14, 1977, the 1976 Cadillac Seville was stolen from where it had been parked in Riley's driveway. At that time the vehicle had not yet been registered in her name.

In the police investigation of the car theft, it was learned for the first time that the Seville was in fact a previously stolen vehicle and that the person purporting to make the sale to Riley had no title or interest in it, in that that person or his predecessor was the original thief.

Riley had no reason to suspect at the time she paid for the car that it was stolen, had a good faith belief the car was her property and was in no way involved in the theft.

The vehicle was not returned to Riley and the person from whom she purportedy purchased it is deceased. As a result of the incident, Riley suffered a loss of the $9,000 she paid as a purchase price.

The trial court, without disclosing its reasons, granted summary judgment in Mid-Century's favor, foreclosing Riley from any recovery from it by virtue of the second theft of the automobile. ■ It is conceded, however, that the theft from Riley was a covered loss within the terms of Mid-Century's policy, such that the determination below would appear to rest upon the conclusion Riley had no insurable interest[1] sufficient to support the insurance agreement, which was instead deemed one in contravention of the proscription of Insurance Code section 280 that "If the insured has no insurable interest, the contract is void."

This conclusion, of course, is challenged on the appeal. The primary aspect of it may be better expressed in the question, "Does the innocent purchaser for value of a stolen automobile acquire an interest therein which can be insured?" (See *Friscia* v. *Safeguard Insurance Company* (1968) 57 Misc.2d 759 [293 N.Y.S.2d 695].)

Resolution of the inquiry in other jurisdictions has been divided both as to result and as to the logic which purportedly required it, with those

---

[1]The term is defined in Insurance Code section 281 as follows: "Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest."

states or courts favoring the claimed insured variously rationalizing their decisions on the basis that even under traditional doctrines the purchaser for value from one without title or right nevertheless obtains a qualified possessory interest as against all but the lawful owner or his representative, which is adequate to constitute an insurable interest, or that such an interest inheres in the moneys parted with to effect the purchase (see, e.g., *Reznick* v. *Home Ins. Co.* (1977) 45 Ill.App.3d 1058 [360 N.E.2d 461]; *Scarola* v. *Insurance Company of North America* (1972) 31 N.Y.2d 411 [340 N.Y.S.2d 630, 292 N.E.2d 776]; *Skaff* v. *United States Fidelity and Guaranty Company* (Fla.App. 1968) 215 So.2d 35 [33 A.L.R.3d 1414]; cf. *Treit* v. *Oregon Automobile Insurance Co.* (1972) 262 Ore. 549 [499 P.2d 335]), and with those jurisdictions reaching a contrary result arriving at it from the premises that the purchaser takes nothing from his seller and suffers loss immediately upon parting with his consideration rather than upon a subsequent theft of the auto purchased, since, certainly at any time before such a second theft, the vehicle could and would be restored to its rightful owner upon demand, without any recourse to an insurer by the purchaser on account of the redemption. (See *Ernie Miller Pontiac, Inc.* v. *The Home Insurance Company* (Okla. 1975) 534 P.2d 1; *Herrington* v. *American Security Insurance Company* (1971) 124 Ga.App. 617 [184 S.E.2d 673]; *Hessen* v. *Iowa Automobile Mut. Ins. Co.* (1922) 195 Iowa 141 [190 N.W. 150, 30 A.L.R. 657]; cf. *Horton* v. *State Farm Fire & Cas. Co.* (Mo.App. 1977) 550 S.W.2d 806.)

Insofar as is concerned the law of this state on the subject, it is urged by Mid-Century we need look no further than the decision in *Napàvale, Inc.* v. *United Nat. Indem. Co.* (1959) 169 Cal.App.2d 119 [336 P.2d 984].* There a purchaser paid $4700 in order to buy a Cadillac at what she was told was a "fleet price." She never received even apparent title to the automobile, which was owned by another than the purported seller, and the vehicle itself disappeared with the latter when the purchaser placed it in his possession in order to have a window rattle removed. When she sought recovery under her policy of insurance it was denied and this result was upheld by both the trial and appellate courts; in the case of the appeal upon the observations that:

"And likewise in a comprehensive note in 9 American Law Reports 2d 183 the editor says: 'While there is little discussion now as to the ne-

---

*Petition for rehearing was denied. Petition for hearing was denied. Schauer, J. would have granted. Peters, J. did not participate.

cessity of the existence of an insurable interest in the insured, the question as to the nature and extent of the interest required in order to qualify as an insurable interest is still a matter of lively debate.' Apropos of our discussion of insurable interest is the statement in 4 Appleman, Insurance Law and Practice, 17, where he says: 'Since contracts of property insurance are essentially contracts of indemnity, if no loss is suffered, there can be no recovery. And, logically, if the insured has no interest in the property, he sustains no loss by its destruction.

"'It is essential that the insured have an interest, therefore, for which the contract is to indemnify him.... The simple rule that one cannot insure for his own benefit the property of another in which he has no interest still governs.

"' ... No insurable interest existing, the contract is considered absolutely void.... As pointed out, the contract is, under circumstances showing no interest in the insured, purely a wager which will not be sanctioned by the courts.'" and the conclusions therefrom that: "While it is true, as appellant contends, that she in good faith paid the price of the automobile to Leonard, the interest which she achieved thereby was such interest only as Leonard had, and he had none. Hence, she never had on the evidence adduced any interest in the car as such which was insurable. What the respondents are here contending is that Mrs. Roth had no title to the Cadillac, defective or otherwise, because (1) Leonard had no title to pass to her and (2) title was in a third party, to wit, Marsha Estates, Inc." (*Id.*, at pp. 123-124.)

Based upon this articulation, the rule in California has uniformly been understood, at least in other jurisdictions, where *Napavale* is regularly cited for the proposition, to be as Mid-Century maintains, namely that no insurable interest arises in favor of even a good faith purchaser for value of stolen vehicles. Nevertheless, as is evident from the foregoing, the analysis in *Napavale* fails to address the fact of an equitable possessory interest inhering in such a purchaser nor does the opinion deal with those authorities which conclude that a right to recover on a policy does not depend upon the insured's being the holder of title to the automobile. (See *Osborne* v. *Security Ins. Co.* (1957) 155 Cal.App.2d 201, 205-206 [318 P.2d 94]; cf. *Vice* v. *Automobile Club of Southern California* (1966) 241 Cal.App.2d 759, 763 [50 Cal.Rptr. 837]; see also *Martin* v. *State Farm Mutual Auto. Ins. Co.* (1962) 200 Cal.App.2d 459 [19 Cal.Rptr. 364].) More importantly, however, it is clear resolu-

tion of the issue of insurable interest was not necessary to the disposition in that case, which depended equally on the conclusion the coverage of the policy of insurance there, unlike here, extended only to automobiles *owned* by the insured.

Our own conclusion on the question is contrary to that arrived at in *Napavale* and is in accord with those authorities cited previously which have found an insurable interest in the innocent purchaser for value. Nor are we persuaded otherwise by Mid-Century's contention that to so hold is at odds with the fact insurance premiums are determined by taking into account the insurer's right of subrogation, a right unavailable under the circumstances present here, nor by the argument such a decision promotes the marketing of stolen goods and increases the likelihood purchasers of such goods will be tempted to destroy or divest themselves of them in order to protect against reclamation by the true owner. The first of these is, simply, irrelevant to a determination of the claimed insured's rights under a policy; the second both ignores the fact our decision extends only to purchasers for value without knowledge, and is wholly speculative, if not unreasonable, respecting the likelihood of destruction or divestment of the purchased auto.

Similarly, were the matter one involving the negligent injury of a third person by the claimed insured, we doubt whether the defense raised herein would be hospitably entertained.

We are likewise not persuaded to vary our determination based upon the possibility some purchasers of stolen vehicles might suffer noncompensable loss upon an owner's reclaiming his property prior to the occurrence of any insured event, since the question so far as the insurer is concerned is not whether it is obligated to pay in all instances but whether it is liable in any.

Finally we do not, as does Mid-Century, deem dispositive in the insurer's favor the provisions of Insurance Code section 283 that "A mere contingent or expectant interest in anything, not founded on an actual right to the thing, nor upon any valid contract for it, is not insurable." As we have shown, Riley in fact did have an actual right to the automobile, at least as to anyone other than the true owner or his representative, such that the statutory limitation, as we construe it, does not apply. (See Patterson, *Some Contract Provisions of the California Insurance Code* (1959) 32 So.Cal.L.Rev. 227, 229-234.)

The order granting respondent Mid-Century's motion for summary judgment is reversed and the cause remanded with directions to the trial court to enter judgment in favor of appellant.

Fleming, J., and Beach, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 17, 1981.